**HIGBY DEVELOPMENT, LLC, Appellant**

v.

**John SARTOR, J. Russell Yerkes, Yerkes Associates, Inc., Lee Ledbetter, Norman Vutz, Daniel Keogh, Uday Patankar and Marietta M. Marquart.**

Commonwealth Court of Pennsylvania.

Argued June 12, 2008.

Decided July 14, 2008.

Barbara P. Anisko, Blue Bell, for appellant.

Frederick M. Brehm, King of Prussia, for appellees, J. Yerkes and Yerkes Associates, Inc.

James D. Young, Harrisburg, for appellees, Ledbetter, Vutz, Keogh, Patankar and Marquart.

BEFORE: PELLEGRINI, Judge, LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Higby Development, LLC (Developer) appeals from three separate orders of the Court of Common Pleas of Chester County (trial court) sustaining the preliminary objections in each order and dismissing with prejudice its complaint against Lee Ledbetter, Norman Vutz, Daniel Keogh, Uday Patankar and Marietta Marquart, members of the Board of Supervisors of Chester Township (Supervisors); John Sartor (Sartor), the Township Engineer; Yerkes Associates, Inc., the Township Code Enforcement Officer, and Russell Yerkes (Yerkes), the individual who performs the duties of the Township Code Enforcement Officer, alleging that they engaged in tortious conduct to impede its real estate development. We affirm the trial court because Developer is unable to make out any of the counts of its complaint against these parties.

This case was previously before this Court in an appeal from a mandamus action which the trial court denied. To recount the facts of that case, Developer wanted to develop a 34–lot subdivision in Schuylkill Township known as Potters Pond. Initially, Supervisors granted conditional use approval for Potters Pond on September 21, 2001, and granted final subdivision and land development approval on November 6, 2002. On March 27, 2003, Supervisors and Developer entered a land development agreement for Potters Pond.

After Supervisors approved the plans, Developer applied for and the Township issued building permits for the construction of the dwellings on each of the lots. Developer completed construction of 26 dwellings in the summer of 2006, and Yerkes inspected each stage of the construction and issued certificates of occupancy (COs) for each of the dwellings. The completed lots were sold to third-party purchasers. Subsequently, a dispute arose when the Township found that there were some differences between the "as built" conditions on some of the completed lots and the plans as approved by Supervisor's September 21, 2001 conditional use approval. Several meetings were held to discus the violations, and eventually a "30–day notice" was sent to the building contractor regarding outstanding violations. Because Developer began construction on another lot and requested inspection by Yerkes without correcting the violations, Yerkes refused to perform the inspection

and Supervisors sent the Developer a letter stating that the development was in violation of its conditional use approval. The letter further stated that the Township would be posting a cease and desist/stop work order on the job site.

Developer filed a mandamus action and sought a peremptory judgment to force the Township to inspect construction of new houses it was building on the remaining unconveyed lots and to issue COs when construction had been completed. The trial court agreed that the Township had an obligation to inspect the premises as long as there was a valid building permit and issued an order granting in part Developer's motion for peremptory judgment directing the Township to perform the inspections of ongoing construction as long as the building permits remained outstanding and were not revoked. The trial court also declared the cease and desist/stop work order void. The Township filed an appeal with this Court, and we affirmed, concluding that the Township had a ministerial duty to inspect the buildings of the development for which building permits had been issued. *See Schuylkill Township and J. Russell Yerkes v. Higby Development, LLC,* 935 A.2d 936 (No. 262 C.D. 2007, filed November 28, 2007).

Soon after our decision came down, Developer filed a four-count complaint against Supervisors, Sartor and Yerkes alleging that on March 3, 2006, Ledbetter and Sartor conducted an administrative inspection of Potters Pond without obtaining permission from Developer or obtaining a warrant to enter upon or conduct an inspection of the completed lots or remaining unconveyed lots or the common area in Potters Pond. It was soon after this inspection that Supervisors issued their March 29, 2006 memorandum reviewing the as-built plans and claiming there were discrepancies between them and the approved plans. The complaint also alleged that Supervisors' requirement that Developer pay the Township for each violation was intended to punish Developer for perceived violations on completed lots which it no longer owned. Thereafter, Yerkes refused to inspect any further homes, and a cease and desist order was placed on the job site in violation of the law. Because Supervisors admitted under oath that they did not obtain a warrant or permission to inspect Potters Pond, and they only required Developer to pay fines for purported violations to send a message to Developer, Developer filed this action.

In Count I, Developer alleged tortious interference with continuing business/contractual relations by all parties. It contended that it had a contractual relationship with buyers of Lot 27 and Lot 28, but as a result of Supervisors', Sartor's and Yerkes' actions and refusal to act, Developer could not comply with its obligations to timely construct dwellings on those lots, and its agreements for sale were cancelled. Developer alleged that it had prospective contractual relationships to sell the remaining unconveyed lots and the dwellings to be constructed on those lots to potential buyers.[1] Developer contended that the above-named parties intended to harm its contractual relationship with the buyers and/or prospective buyers of the remaining unconveyed lots and their conduct was willful, wanton and outrageous warranting the award of punitive damages. It also requested that we enjoin the parties from

---

1. Developer alleges in its complaint that it has constructed dwellings on lots 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 30, 31, 32 and 33. It has sold and conveyed title to homeowners of all of the dwellings constructed on the completed lots with the exception of the dwellings on lots 5 and 8. Developer seeks to construct dwellings on lots 13, 14, 25, 26, 27, 28, 29 and 34.

interfering with Developer's present and prospective business/contractual relationships and award compensatory and consequential damages plus interest and costs. In Count II, filed against all parties, Developer alleged conspiracy to tortiously interfere with contract by acting with intent to harm Developer and its contracts with buyers of the remaining unconveyed lots.

In Count III, Developer alleged that Sartor and Ledbetter trespassed on the Potters Pond property without authorization to cause harm to Developer and, as a result, took action against Developer to cause it harm. Finally, in Count IV, also against Sartor and Ledbetter, Developer alleged a violation of its civil rights under the Fourth Amendment to the United States Constitution based on Sartor and Ledbetter trespassing at Potters Pond to inspect property that had already been conveyed.

Supervisors, Sartor and Yerkes each filed preliminary objections to the complaint. In their preliminary objections, Supervisors demurred because the elements of tortious interference with continuing business/contractual relations were not present in the complaint. Similarly, regarding Count III, they also demurred because the elements of trespass were not present in the complaint. As to Count IV, they demurred because the claims were barred by immunity under the Political Subdivision Tort Claims Act (Tort Claims Act).[2] They argued in the alternative that Count IV was precluded by prior case law holding that no warrant was required under the facts pled.

Sartor alleged that Count I had to be dismissed by virtue of his immunity under the Tort Claims Act because he was an appointed Township official and, therefore, an employee of the Township who would be immune from suit. As to Count II, Sartor alleged that a single entity could not conspire with itself, and employees of a single entity could not conspire among themselves. Because all of the defendant/employees were Township employees, they could not conspire among themselves, and the conspiracy claim had to be dismissed. Regarding Count III, Sartor alleged that the Township Subdivision and Land Development Ordinance (SALDO) explicitly authorized the Township to inspect all improvements that might be accepted under its jurisdiction for conformance with plans and compatibility with good construction practice, and further authorized the applicant to permit the Township Engineer to inspect any improvement that might be accepted by the Supervisors. The SALDO also stated that the inspections were to be conducted at a reasonable time and place as determined by the Township Engineer as being necessary to properly evaluate the improvement. As to Count IV, Sartor alleged that Developer had a reduced expectation of privacy because the industry had historically been subject to intense government regulation, and a warrant was not required when a search involved an industry that was closely regulated.

Finally, Yerkes alleged in his preliminary objections that Count I of Developer's complaint had to be dismissed because he was an employee of the Township and he was an appointed Township official; therefore, any action or inaction he took while acting in his official capacity as Township Code Enforcement Officer would make him immune from suit under the Tort Claims Act. Because he was immune

---

2. 42 Pa.C.S. §§ 8541–8542. Notably, Supervisors did not raise that they had absolute immunity as high public officials.

from suit, there was no cause of action for civil conspiracy under Count II as there was no underlying tortious act. Regarding punitive damages, Yerkes argued that because Developer failed to plead any specific acts of outrageous conduct or willful misconduct by Yerkes, he was not entitled to punitive damages.

The trial court issued three separate orders all dated October 3, 2007, addressing the preliminary objections. In its first order, it sustained the preliminary objections of Ledbetter as to Counts I, II and III of Developer's complaint and dismissed those same counts of Developer's complaint with prejudice. The trial court also sustained Ledbetter's preliminary objection to Count IV asserting a violation of Developer's Fourth Amendment Right and dismissed that count of Developer's complaint with prejudice. The trial court agreed that Ledbetter was entitled to governmental immunity and that Developer failed to prove allegations amounting to willful misconduct, an intentional tort, a crime, actual fraud or actual malice sufficient to establish that Ledbetter's conduct fell outside the protection of the Tort Claims Act. As to Developer's claim of a Fourth Amendment violation based on Supervisors' alleged unauthorized entry upon and subsequent inspections of the properties, the trial court noted that Developer had no standing to claim such a violation on property it did not own. While the complaint did allege that Developer still owned lots 5 and 8 at the time of inspection, the trial court further found that the SALDO permitted Ledbetter to enter the property to make the inspection. The trial court issued an identical order with regard to Sartor finding that he, too, was entitled to governmental immunity and that Developer failed to prove allegations that fell outside the protection of the Tort Claims Act. Again, there was no standing for a Fourth Amendment violation.

In its order pertaining to Yerkes and remaining Supervisors, the trial court sustained their preliminary objections in the nature of a demurrer as to Counts I and II and dismissed those same counts with prejudice in Developer's complaint. Again, the trial court found that Yerkes and Supervisors were entitled to governmental immunity as they were employees or officials who were acting on behalf of the Township. It also determined that Developer failed to provide allegations that would overcome the governmental immunity provided to Yerkes and Supervisors. This appeal by Developer from all three of the trial court's orders followed.[3]

## I.

Developer first contends that the trial court erred in granting Sartor's and Yerkes' preliminary objections based on immunity because immunity is an affirmative defense that must be raised in new matter.

Developer is correct. Pa. R.C.P.

3. Our scope of review from the trial court's orders sustaining the preliminary objections dismissing Developer's complaint is limited to determining whether the trial court committed legal error or abused its discretion. *Cowell v. Department of Transportation*, 883 A.2d 705 (Pa.Cmwlth.2005). When reviewing dismissal of an action on preliminary objections, we must accept as true all well-pled facts set forth in the complaint as well as all inferences reasonably deducible therefrom. *In re Estate of Bartol*, 846 A.2d 209 (Pa.Cmwlth.2004). Preliminary objections in the nature of a demurrer may be sustained only if it is certain and beyond all doubt that the law will not permit recovery, and where any doubt exists, that doubt must be resolved in favor of overruling the demurrer. *Penllyn Greene Associates, L.P. v. Clouser*, 890 A.2d 424 (Pa. Cmwlth.2005).

No. 1030(a)[4] provides that immunity from suit is an affirmative defense that must be raised in a responsive pleading under the heading of "new matter." However, a limited exception to this Rule has been created allowing the raising of the affirmative defense of governmental immunity as a preliminary objection when it is clearly applicable on the face of the complaint and where the plaintiff raises no objection. *Sweeney v. Merrymead Farm, Inc.*, 799 A.2d 972 (Pa.Cmwlth.2002). Additionally, where a substantive defense is raised in preliminary objections, the failure of the opposing party to file preliminary objections to those preliminary objections waives any procedural defect and allows the trial court to rule on the preliminary objections. *Heinrich v. Conemaugh Valley Memorial Hospital*, 436 Pa.Super. 465, 648 A.2d 53 (1994).[5] Here, it was evident on the face of Developer's complaint that governmental immunity was applicable, and while Developer had the opportunity to file preliminary objections to the preliminary objections filed by Sartor and Yerkes, it did not. Because Developer did not do so, Developer waived the issue regarding immunity, and the trial court properly ruled on their preliminary objections.

4. Pa. R.C.P. No. 1030(a) provides, in relevant part:

 Except as provided by subdivision (b), all affirmative defenses including but not limited to the defenses of ....immunity from suit ....**shall be pleaded in a responsive pleading under the heading "New Matter"**. A party may set forth as new matter any other material facts which are not merely denials of the averments of the preceding pleading. (Emphasis added.)

5. In *Heinrich*, the Court explained:

 In general, preliminary objections are not available to raise the defense of immunity from suit. *Kyle v. McNamara & Criste*, 506

## II.

Developer also contends that the trial court erred in concluding that Yerkes was a Township employee because it ignored Developer's allegation that Yerkes Associates was an independent third party business entity, i.e., a Pennsylvania corporation that had contracted with the Township to provide services and that Yerkes was an employee of that corporation performing many duties of the Township's Code Enforcement Officer.[6] Developer argues that just because the Township hired independent third party contractors to perform certain Township functions does not mean that they automatically become Township employees protected from suit by governmental immunity under the Tort Claims Act. Further, such determinations are premature at this stage of the proceedings, and a factual inquiry is necessary to determine whether they are entitled to governmental immunity.

■ Section 8541 of the Tort Claims Act, 42 Pa.C.S. § 8541 provides:

 Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

Pa. 631, 487 A.2d 814 (1985). Where a party erroneously asserts substantive defenses in preliminary objections rather than raising same by answer or in new matter, the failure of the opposing party to file preliminary objections to defective preliminary objections raising erroneous defenses, waives the procedural defect and allows the trial court to rule on the preliminary objections.
*Id.*, 648 A.2d at 57.

6. Developer points out that the complaint does not allege that Yerkes is a Township employee and that Sartor was an employee of Gilmore & Associates, Inc., a corporate entity, not the Township.

Section 8545 of the Tort Claims Act, however, provides for liability of an employee, stating:

An employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee, which are within the scope of his office or duties only to the same extent as his employing agency and subject to the limitations imposed by this subchapter.[7]

An "employee" is defined as:

*Any person who is acting or who has acted on behalf of a government unit whether on a permanent or temporary basis,* whether compensated or not and whether within or without territorial boundaries of the government unit, including any volunteer fireman and any elected officer, *member of a governing body or other person designated to act for the governing unit.* Independent contractors under contract to the government unit and their employees and agents and persons performing tasks over which the government unit has no legal right or control are not employees of the government unit. (Emphasis added.)

42 Pa.C.S. § 8501.[8]

Under this definition, there is no requirement that a person be an employee in the traditional sense, but only that the employee is acting on behalf of the governmental entity. In *Walls v. Hazleton State Hospital,* 157 Pa.Cmwlth. 170, 629 A.2d 232 (1993), an action was brought by a patient alleging that he received negligent medical care from a doctor employed by a medical group retained as an independent contractor to provide medical services to a state hospital. While the doctor was not a traditional "employee," he was held to be an *employee* of a Commonwealth party because he fell within the definition as "a person who acted on behalf of the government unit whether on a temporary or permanent basis." *See also County of Schuylkill v. Maurer,* 113 Pa.Cmwlth. 54, 536 A.2d 479 (1988).

In this case, Developer alleged that Yerkes was an associate of Yerkes Associates, Inc. and performed many duties of the Township's Code Enforcement Officer, including *routinely inspecting the*

7. 42 Pa.C.S. § 8542(a)(2) also provides:

(a) **Liability imposed.**—A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):

\* \* \*

(2) The injury was caused by the negligent acts of the local agency **or an employee** thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct. (Emphasis added.)

Subsection (b) contains the following categories which impose liability: vehicle liability; care, custody or control of personal property; real property; trees, traffic controls and street lighting; utility service facilities; streets; sidewalks; ad care, custody and control of animals.

8. To determine whether there is an employee-employer relationship or an owner-independent contractor relationship, some of the factors considered include who controls the manner of work to be performed; the responsibility for the result; the terms of agreement between the parties; the nature of the work or occupation; the skill required for the performance; whether one is engaged in a distinct occupation or business; which party supplies the tools; whether payment is by the time or by the job; whether the work is part of the regular business of the employer; and whether there is the right to terminate the employment at any time. *Helsel v. Complete Care Services, LP,* 797 A.2d 1051 (Pa.Cmwlth. 2002).

*dwellings Developer was constructing* in accordance with Township standards. (Complaint at paragraphs 3, 4, 24, 34, 56.) Developer further alleged that "Under the terms of the building permits, work could not proceed to the next stage of construction until the inspectors approved the various stages of construction." (Complaint at paragraph 25.) "Yerkes Associates inspected each dwelling [referring to Lots 1 and 2] on at least five (5) separate occasions, including, but not limited to, inspections of the footings, foundation, framing, plumbing, and for a final certificate of occupancy." (Complaint at paragraph 26.) The complaint further alleged that Yerkes conducted a final inspection of the dwellings constructed on Lots 1 and 2 and issued final COs for both homes. (Complaint at paragraph 28.) Developer alleged in paragraph 32 of the complaint that the same procedure was followed on lots 3 through 34. Because Yerkes was clearly acting as the Code Enforcement Officer on behalf of the Township in order to determine whether the next phase of construction could occur, and clearly did not make final decisions of Supervisors as he only recommended to them whether or not COs should be issued, Yerkes was an "employee" for purposes of the Tort

Claims Act and was entitled to governmental immunity.

■ Similarly, Sartor was an "employee" of the Township because Developer alleged that Sartor's employer, Gilmore & Associates, Inc., was the Township's Engineer. (Complaint at paragraph 2.) Sartor, then, was an agent or employee of the Township's Engineer acting on behalf of the Township for purposes of the Tort Claims Act and also entitled to governmental immunity.[9]

### III.

Developer argues next that the trial court erred in determining that it failed to plead sufficient facts to establish that the conduct of Supervisors, Sartor and Yerkes constituted willful misconduct and fell outside the protection of the Tort Claims Act.

■ In *Kuzel v. Krause*, 658 A.2d 856 (Pa.Cmwlth.1995), we stated that for purposes of the Tort Claims Act, "willful misconduct is synonymous with the term 'intentional tort'... *King v. Breach*, 115 Pa. Cmwlth. 355, 367, 540 A.2d 976, 981 (1988). The governmental employee must desire to bring about the result that followed his conduct or be aware that it was substantially certain to follow."[10] *Id.* at 859.

9. We also note that Developer alleged in its complaint at paragraph 49:

> *Neither Ledbetter nor Sartor nor any other representatives of the Township* requested or obtained permission from Higby, or any other party, to enter upon the Completed Lots or the Remaining Unconveyed Lots or the common areas in Potters Pond. (Emphasis added.)

Additionally, Developer alleged at paragraph 127:

> Ledbetter and Sartor are *"state actors"*. (Emphasis added.)

10. We further explained in *Krause:*

> The characterization of "willful misconduct" as an intentional tort is at variance

with how that term is defined in the Restatement (Second) of Torts. As normally defined, however, willful misconduct lies on a fault continuum somewhere between ordinary negligence and an intentional tort. No intent to cause the injury is required. To establish willful misconduct, all that needs to be shown is that the actor was conscious of the risk of harm and the risk was high either in degree or probability. The Restatement definition of willful misconduct differs from an intentional tort and the characterization placed on it under the Tort Claims Act in that it does not require that the injury is certain or substantially certain to occur. *See generally* Restatement (Second) of Torts, §§ 500–503.

> *Id.,* 658 A.2d at 859.

From our reading of the complaint, there are no allegations that Supervisors, Sartor or Yerkes desired to bring harm to Developer.

Regarding Supervisors and Yerkes, Developer pled:

• Yerkes inspected and approved Lots 1 and 2 and signed COs for those lots as well as lots 3 through 34. (Complaint at paragraphs 24–30, 32–36);

• Yerkes refused to inspect any further properties after Sartor and Ledbetter inspected the properties and determined that Developer had violated its conditional use permits. (Complaint at paragraphs 73–77);

• Yerkes was instructed by the Supervisors to issue a Cease and Desist/Stop Work Order to Developer for the purported Zoning Code violations. (Complaint at paragraph 73.);

• Yerkes' refusal to inspect any construction on the remaining unconveyed lots was in violation of state and local laws and the Construction Code regulations. (Complaint at paragraph 79);

• Supervisors directed Yerkes to issue a Cease and Desist/Stop Work Order solely to punish Developer. (Complaint at paragraphs 62, 69);

• Supervisors unlawfully conspired to interfere with the construction of the dwellings. (Complaint at paragraphs 71, 72);

• Actions taken by Supervisors and Yerkes were illegal, made in bad faith, made with improper motive and made in concert. (Complaint at paragraphs 81–85); and

• Conduct of Supervisors and Yerkes was arbitrary, capricious, willful, wanton, outrageous and reckless and they knew their conduct was illegal. (Complaint at paragraphs 80, 86, 112).

Specifically regarding Supervisor Ledbetter, Developer pled:

• Ledbetter physically measured dwelling locations in relation to ZO set-back requirements. (Complaint at paragraph 51);

• He reported his findings from the property inspection at the July 12, 2006 Supervisors' meeting including his belief that decks on completed lots encroached upon the common areas, access window wells extended into common areas, and dwellings were improperly cantilevered past the footprint of the building. (Complaint at paragraph 64); and

• Ledbetter knew or should have known that his acts were illegal and his conduct was arbitrary and capricious, constituting willful misconduct.

As for Sartor, Developer pled:

• Sartor physically measured dwelling locations in relation to ZO-set-back requirements. (Complaint at paragraph 51);

• After Sartor conducted the inspection, he issued a memorandum dated March 29, 2006, stating that approval was required from Supervisors for alleged discrepancies between the building permit plans and the as-built plans regarding finished floor elevations, deck locations and deck steps despite the fact that the Township approved the construction, COs had been issued, that all of the dwellings had been sold but two and that some of the discrepancies were a result of modifications or additions made to the dwelling by the homeowners. (Complaint at paragraph 53); and

• Sartor knew or should have known that his acts were illegal and his conduct was arbitrary and capricious, constituting willful misconduct.

Missing from these allegations are any claims that Supervisors, Yerkes or Sartor

specifically intended to cause Developer harm with their conduct. All these allegations do is prove that the parties were performing their job duties and nothing more. Because they do not prove an intent to do harm to Developer, the trial court properly determined that there was no willful misconduct by Supervisors, Sartor and Yerkes, and they were protected by the Tort Claims Act.

## IV.

Developer's third argument is that the trial court erred by dismissing its Fourth Amendment[11] civil rights claims on the basis that municipal officials and their agents were not required to obtain a warrant before entering upon private residential property to conduct administrative inspections. It argues that Sartor and Ledbetter had no legal authority to go onto those properties for the purpose of conducting inspections of private residences for which COs had been issued, but for which they had no warrants. Developer contends that Sartor and Ledbetter entered the properties for the sole purpose of finding zoning code violations.

■ To prevail on its civil rights claim, Developer must show that Sartor and Ledbetter acted under color of state law and that they deprived Developer of a right secured by the Constitution or federal law. *Brown v. Blaine*, 833 A.2d 1166 (Pa. Cmwlth.2003). Because both were state actors when they conducted the inspections, the only question remaining is whether they violated Developer's Fourth Amendment rights.

■ As to all but two of the properties, the trial court properly found that Developer had no standing to claim a Fourth Amendment violation for property it no longer owned, i.e., those units which had already been conveyed to purchasers[12] because Developer had no protected interest. *See Commonwealth v. Sell*, 504 Pa. 46, 470 A.2d 457 (1983) (citing *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), holding that interest protected by the Fourth Amendment is determined by whether a person protected has a legitimate expectation of privacy in the invaded place). However, because the complaint alleged that Developer still owned lots 5 and 8 at the time of the inspections, the trial court, citing *United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972), went on to explain that there was an exception to the Fourth Amendment warrant requirement in the case of closely regulated industries with a long history of governmental supervision and oversight enforced by inspection. It determined that the residential construction industry, a commercial business, was a closely regulated industry[13] and warrantless inspections were not unconstitutional.

We agree with the trial court that while the buildings on those lots were completed, they were "for sale" and Inspectors did not need to obtain a warrant to go on to lots 5 and 8. A warrantless search of the property was permissible because the construc-

---

11. The Fourth Amendment to the United States Constitution provides, in relevant part:

... [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly de-

scribing the place to be searched, and the persons or things to be seized.

12. The conveyed lots were 1, 2, 3, 4, 6, 7, 9, 10, 11, 12, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 30, 31, 32 and 33.

13. *See Frey v. Panza*, 621 F.2d 596 (3rd Cir. 1980).

tion industry has been and continues to be an industry with "governmental supervision and oversight enforced by inspection." [14] *See also* other closely regulated industries that have held that warrants were not required: *Donovan v. Dewey,* 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981) (warrantless search allowed of stone quarry); *United States v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972) (warrant not needed by inspector to inspect pawnshop dealing in sporting weapons); *Colonnade Catering Corporation v. United States,* 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970) (warrant not needed by inspector to inspect catering corporation that sold liquor); *Middlesex County Health Department v. Roehsler,* 235 N.J.Super. 262, 561 A.2d 1212 (1989) (warrant not needed by inspector to inspect open land/outdoor area of business where landfill was observed).

 Moreover, even ignoring that the inspections took place in a heavily regulated industry, the inspections here did not violate any of Developer's Fourth Amendment rights. "[A] Fourth Amendment search does *not* occur—even when the explicitly protected location of a house is concerned—unless the individual manifested a subjective expectation of privacy in the object of the challenged search, and society [is] willing to recognize that expectation as reasonable." *Kyllo v. United States,* 533 U.S. 27, 33, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001) (internal quotation marks omitted). Additionally, a merely "visual observation is no 'search' at all." *Id.* at 32, 121 S.Ct. 2038; *see also Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987) ("A truly cursory inspection—one that involves merely looking at what is already exposed to view, without disturbing it—is not a 'search' for Fourth

Amendment purposes, and, therefore, does not even require reasonable suspicion").

Furthermore, a technical trespass to look at what is visible has been found not to constitute an unreasonable search. *Air Pollution Variance Board v. Western Alfalfa Corporation,* 416 U.S. 861, 94 S.Ct. 2114, 40 L.Ed.2d 607 (1974) (health inspector enters outdoor premises to make visual inspection of chimney emissions); *Hester v. United States,* 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924) (investigation of unlawfully distilled spirits on grounds surrounding house). In these cases, the Supreme Court has applied the "open fields" doctrine and found the Fourth Amendment right to be free from unreasonable searches did not apply to the grounds immediately surrounding a dwelling. *Id.* In *Ehlers v. Bogue,* 626 F.2d 1314 (5th Cir. 1980), *cert. denied,* 451 U.S. 909, 101 S.Ct. 1979, 68 L.Ed.2d 298 (1981), that Circuit found that mere visual inspections of the exterior of an apartment building and a nearby refuse dumpster, unaccompanied by any entry into an area from which the general public was excluded, did not constitute an unreasonable search. *Id.* (citing *Western Alfalfa's* "open fields" doctrine).

Given all that, when Sartor and Ledbetter came on the property to examine the exterior of the homes, those homes were for sale and Developer had no expectation of privacy when they were being offered to the public. Consequently, the trial court properly concluded that Developer's Fourth Amendment rights were not violated.

## V.

 Finally, Developer contends that the trial court erred because it failed to allow it to amend its complaint because it was possible that it could obtain a recovery

14. *Frey,* 621 F.2d at 598.

on at least one of its four counts. Citing *Jones v. City of Philadelphia,* 893 A.2d 837 (Pa.Cmwlth.2006), Developer states that where a trial court sustains preliminary objections on the merits, it is generally an abuse of discretion to dismiss a complaint without allowing leave to amend. Developer also cites Pa. R.C.P. No. 1033 which provides that a party may amend its pleading at any time by leave of court. Both Sartor and Yerkes counter that "the facts are the facts" and Developer could not amend the complaint to allege additional facts that would further its claims against them, including specific facts to support its general allegations of willful misconduct.

Although Developer cites *Jones* to prove that the trial court should have allowed it to file an amended complaint, it fails to cite the rest of the holding in *Jones* which provides: "If it is possible that the pleading can be cured by amendment, a court 'must give the pleader an opportunity to file an amended complaint. . . . This is not a matter of discretion with the court but rather a positive duty.'" *Jones,* 893 A.2d at 846. We further stated, "Where there is no possibility of recovery under a better statement of the facts, leave to amend need not be granted." Id. Here, Developer never states what an amendment would accomplish, and there is nothing in the record that indicates it ever filed a motion or made any request with the trial court to amend its complaint stating its purpose for filing an amended petition.[15] Consequently, we find no fault with the trial court's refusal to allow Developer to amend its complaint.

Accordingly, the orders of the trial court are affirmed.

**ORDER**

AND NOW, this *14th* day of *July,* 2008:

1. The order of the Court of Common Pleas of Chester County, dated October 3, 2007, sustaining all of the preliminary objections in the nature of a demurrer of Defendants J. Russell Yerkes and Yerkes Associates, Inc. and Defendants Normal Vutz, Daniel Keogh, Uday Patankar, and Marietta M. Marquart and dismissing with prejudice all counts of the complaint of Higby Development, LLC is affirmed.

2. The order of the Court of Common Pleas of Chester County dated October 3, 2007, sustaining all of the preliminary objections in the nature of a demurrer of John Sartor and dismissing with prejudice all counts of the complaint of Higby Development, LLC is affirmed.

3. The order of the Court of Common Pleas of Chester County dated October 3, 2007, sustaining all of the preliminary objections in the nature of a demurrer of Lee Ledbetter and dismissing with prejudice all counts of the complaint of Higby Development, LLC is affirmed.

---

**15.** Pursuant to Pa. R.C.P. No. 1028(c)(1), "A party may file an amended pleading as of course within twenty days after service of a copy of preliminary objections. If a party has filed an amended pleading as of course, the preliminary objections to the original pleading shall be deemed moot." We note that Developer had the opportunity to file an amended complaint after it was served with the preliminary objections, but did not do so.