IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anna Oakes, Individually and as :
Administratrix of the Estate of :
Pheylan Marie Cline, Deceased, :
:
                Appellant :
:
        v. : No. 1368 C.D. 2019
: Submitted: May 15, 2020
Jeff Richardson, Individually and :
Richardson Inspection Services, LLC :


BEFORE: HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                     FILED: July 9, 2020

        In this wrongful death and survival action, Anna Oakes (Oakes), Individually and as Administratrix of the Estate of Pheylan Marie Cline (Decedent), appeals from an order of the Court of Common Pleas of Mercer County (trial court) granting the motion for summary judgment filed by Jeff Richardson, Individually and on behalf of his business Richardson Inspection Services, LLC (collectively, Richardson), upon determining that Richardson was protected by governmental immunity under Sections 8541-8542 of the Judicial Code, commonly known as the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa. C.S. §§8541-8542. Oakes argues that the trial court erred in determining that Richardson was a governmental employee entitled to immunity under the Tort Claims Act, rather than an independent contractor. Discerning no error, we affirm.

## I. Background

This case arises out of the tragic and heartbreaking death of Decedent, when she wandered onto the neighbor's property, through gated entrances, and drowned in their aboveground swimming pool on April 20, 2016. At the time of her death, Decedent was approximately 20 months old. Oakes is Decedent's mother and the administratrix of her estate.

Oakes initiated this action by filing a wrongful death and survival action against Richardson, who is the building code inspector for Coolspring Township (Township), Mercer County, where the neighbor's property is situated. Therein, she alleged that Decedent obtained access to the neighbor's deck and aboveground swimming pool through gates. The first gate opened inward, toward the deck. The second gate likewise opened inward, toward the swimming pool. Richardson reviewed the design of the gates and issued a building permit. Oakes claimed that the design and inward operation of the gates violated Pennsylvania's Uniform Construction Code (UCC).[1] She claimed that Richardson was negligent in either issuing the permit and/or inspecting the neighbor's property. Oakes' theory of liability is that the improper gate configuration allowed Decedent access to the neighbor's swimming pool, which led to her tragic death.

Early in the litigation, Richardson advanced a governmental immunity defense claiming that he served as an employee of the Township by acting as the Township's building code official. Following limited discovery on the issue of immunity, Richardson filed a motion for summary judgment.

On July 12, 2019, the trial court granted the motion for summary judgment upon concluding that Richardson was an employee of the Township and

---

[1] 34 Pa. Code §§401.1-405.42.

entitled to governmental immunity under the Tort Claims Act. In determining whether Richardson was an employee or independent contractor, the trial court engaged in a review of the factors set forth in *Hammermill Paper Co. v. Rust Engineering Co.*, 243 A.2d 389 (Pa. 1968), and considered the following undisputed facts. The Township appointed Richardson and his company to serve as its official inspection service for 2007 at its regular meeting, and he has continued to serve in this capacity without any annual renewal process by the Township. The job description included fulfilling the duties of the building code official as defined in the Pennsylvania Construction Code Act (Construction Act).[2] Richardson is required to have 18 certifications by the Department of Labor and Industry and professional liability insurance in the amount of at least $1,000,000. The Township identified Richardson as its building code official on its website. Richardson and his employees have specialized and expert knowledge relied upon by the Township. Richardson received applications for building permits, issued building permits in his sole discretion, conducted inspections of work sites to enforce the UCC, and issued occupancy permits upon satisfactory completion of construction. He did all of this solely on behalf of the Township as its building code official. The Township collected the permit fees, kept up to 20% and paid the balance to Richardson, and issued the building permits to the applicants. The Township also directed Richardson to issue stop work orders for construction occurring without permits. The trial court also relied on precedent of this Court that held that building inspectors are employees under the *Hammermill* test. Ultimately, the trial court concluded that Richardson was acting solely on behalf of the Township as its official building code inspector. As such, Richardson fell within the definition of an "employee" under

---

[2] Act of November 10, 1999, P.L. 491, *as amended*, 35 P.S. §§7210.101-7210-1103.

3

Section 8501 of the Judicial Code, 42 Pa. C.S. §8501, and was entitled to governmental immunity. From this decision, Oakes timely appealed.[3, 4]

## II. Issue

The sole issue in this appeal is whether the trial court erred in determining that Richardson is immune from liability as a government employee under the Tort Claims Act. Oakes argues that Richardson was never an employee of the Township nor can he be considered a temporary or "quasi employee." Rather, at all relevant times, Richardson was acting as an independent contractor for the Township based on the *Hammermill* test. Oakes points to the fact that Richardson set the prices for the inspections, used his own forms and documents, scheduled reviews of plans and drawings, met with those seeking building permits, and issued building permits without approval from the Township. Richardson has multiple certifications from the Department of Labor and Industry evidencing his training, skill and experience as a building inspector, which falls outside the Township's purview. Richardson's relationship with the Township was not exclusive because he performed inspection services for approximately 40 municipalities throughout Western Pennsylvania. Finally, Richardson identifies himself as a third-party business entity and carries $1,000,000 of insurance coverage. Although Oakes

---

[3] Oakes filed her appeal with the Superior Court, which transferred the matter to this Court.

[4] Our review is limited to determining whether the trial court committed an error of law or an abuse of discretion. *Freeman-Bennett v. York County Board of Assessment Appeals,* 209 A.3d 1137, 1141 n.4 (Pa. Cmwlth. 2019) (quoting *Kaplan v. Southeastern Pennsylvania Transportation Authority*, 688 A.2d 736, 738 n.2 (Pa. Cmwlth. 1997)). "Summary judgment is properly granted whenever there is no genuine issue of material fact as to a necessary element of the cause of action." *Id.* (internal citation and quotations removed); *accord* Pa. R.C.P. No. 1035.2(1)). We must review the record in the light most favorable to the non-moving party. *Freeman-Bennett.*

4

recognizes that there is precedent holding that a building inspector is an employee, she argues that those cases met more of the *Hammermill* criteria, particularly the control factor. For these reasons, Oakes maintains that Richardson is not entitled to immunity.

### III. Discussion

Generally, a local agency and its employees are immune from suit, unless immunity is specifically waived. 42 Pa. C.S. §§8541, 8542. The Township is a local agency. The question before us is whether Richardson is an "employee" of the Township as that term is defined or an "independent contractor."

Pursuant to Section 8501 of the Judicial Code, an "employee" is defined as:

> Any person who is acting or who has acted on behalf of a government unit whether on a permanent or temporary basis, whether compensated or not and whether within or without the territorial boundaries of the government unit, including any volunteer fireman and any elected or appointed officer, member of a governing body or other person designated to act for the government unit. Independent contractors under contract to the government unit and their employees and agents and persons performing tasks over which the government unit has no legal right of control are not employees of the government unit.

42 Pa. C.S. §8501. In determining whether a person is an employee or independent contractor, we routinely turn to the *Hammermill* test for guidance.

In *Hammermill*, our Supreme Court reversed a trial court's determination that an employer-employee relationship, and not an owner-independent contractor relationship, existed between an engineering contractor and a manufacturer, where the contractor was hired to construct a wall that subsequently

5

collapsed. The Supreme Court opined that while no hard and fast rule exists to determine whether a particular relationship is that of employer-employee or owner-independent contractor, certain guidelines have been established and certain factors are required to be taken into consideration, including:

> [c]ontrol of manner [of] work is to be done; responsibility for result only; terms of agreement between the parties; the nature of the work or occupation; skill required for performance; whether one employed is engaged in a distinct occupation or business; which party supplies the tools; whether payment is by the time or by the job; whether work is part of the regular business of the employer, and also the right to terminate the employment at any time.

*Hammermill*, 243 A.2d at 392 (internal citation omitted).

Although no one factor is dispositive, control over the work to be done and the manner in which it is to be performed are the primary factors for establishing an employer-employee relationship. *American Road Lines v. Workers' Compensation Appeal Board (Royal)*, 39 A.3d 603, 611 (Pa. Cmwlth. 2012). Control exists "where the alleged employer: possesses the right to select the employee; the right and power to discharge the employee; the power to direct the manner of performance; and, the power to control the employee." *Id.* Whether a person acts as an independent contractor or an employee is a question of law. *Johnson v. Workmen's Compensation Appeal Board (Dubois Courier Express)*, 631 A.2d 693, 696 (Pa. Cmwlth. 1993).

In the context of the Tort Claims Act, simply because an act is done on behalf of or in the interest of a local agency does not necessarily entitle a private contractor to governmental immunity. *Helsel v. Complete Care Services, L.P.*, 797 A.2d 1051, 1057 (Pa. Cmwlth. 2002). "In one sense[,] any independent

6

contractor is acting on behalf of the government agency to accomplish the purpose of the contract." *Id.* The mere fact that an entity performs a function for which the municipality would enjoy immunity if the municipality performed it directly does not mean that the entity automatically enjoys immunity. *See e.g.*, *Helsel*, 797 A.2d at 1057 (private entity engaged in the management and administration of a county-owned nursing home was not entitled to immunity because it was primarily acting on behalf of and in its own interest "in the course of promoting its business of selling management services for profit"); *Smith v. Porter Township, Clinton County*, 595 A.2d 693 (Pa. Cmwlth. 1991) (case remanded to determine whether an employee of an engineering firm under contract with a township to perform duties of a sewage enforcement officer was an employee or independent contractor under the *Hammermill* test); *Schuylkill County v. Maurer*, 536 A.2d 479 (Pa. Cmwlth. 1988) (remand necessary to determine whether county solicitor was an employee or independent contractor under *Hammermill* test).

Under the *Hammermill* test, this Court has consistently determined that municipal code enforcement officers are "non-traditional employees," entitled to governmental immunity under the Tort Claims Act. *See Cornell Narberth, LLC v. Borough of Narberth*, 167 A.3d 228, 240 (Pa. Cmwlth. 2017); *Higby Development, LLC v. Sartor*, 954 A.2d 77 (Pa. Cmwlth. 2008), *vacated and remanded on other grounds*, 991 A.2d 305 (Pa. 2010); *see also Spencer v. Grill* (Pa. Cmwlth., No. 913 C.D. 2017, filed April 10, 2018).[5]

---

[5] Section 414(a) of this Court's Internal Operating Procedures authorizes the citation of unreported panel decisions issued after January 15, 2008, for their persuasive value, but not as binding precedent. 210 Pa. Code §69.414(a).

In *Higby*, the township utilized a private company to serve as its code enforcement officer. 954 A.2d at 80. A real estate developer sued the private inspection company, along with township employees, alleging tortious conduct impeding development. The inspection company argued that it acted as an employee of the township within the meaning of the Tort Claims Act when it performed code enforcement functions and, consequently, was entitled to governmental immunity. The trial court agreed and dismissed the inspection company from the lawsuit. On appeal, we affirmed. We held that the definition of "employee" in Section 8501 of the Judicial Code contains "no requirement that a person be an employee in the traditional sense, but only that the employee is acting on behalf of the government entity." *Higby*, 954 A.2d at 85. Under the *Hammermill* factors,[6] we determined that the inspection company "was clearly acting as the [c]ode [e]nforcement [o]fficer on behalf of the [t]ownship in order to determine whether the next phase of construction could occur, and clearly did not make final decisions of [the s]upervisors as he only recommended to them whether or not [certificates of occupancy] should be issued . . . ."[7] *Higby*, 954 A.2d at 85.

Later, in *Cornell Narberth*, this Court again concluded that a private inspection company hired by a borough to act as its building inspector was acting as an employee of the borough for purposes of the Tort Claims Act. 167 A.3d at 240. There, a real estate developer applied for building permits regarding a housing project. The developer met with a borough manager and a representative of the

---

[6] *Higby*, 954 A.2d at 85 n.8 (citing *Helsel* for the *Hammermill* factors).

[7] In 2010, the Supreme Court vacated this Court's order in *Higby* and remanded the matter to the trial court for further proceedings on the intentional tort claims. *Higby Development, LLC v. Sartor*, 991 A.2d 305 (Pa. 2010). Notably, the Supreme Court did not reverse this Court's holding that a third party that acts on behalf of a government unit in performing governmental functions is immune from liability under the Tort Claims Act.

8

inspection company hired by the borough to perform building inspections. Based on that meeting, the developer believed he was not required to install automatic sprinkler systems in the homes. The inspection company reviewed and approved the drawings, which showed no sprinklers. The borough issued permits. Later, the borough refused to issue certificates of occupancy because the homes did not have automatic sprinklers. The developer sued. The inspection company claimed immunity on the basis it served as an employee of the borough.

On appeal, this Court, relying heavily on *Higby*, reached the same conclusion that the inspecting company was an employee. Although we did not reference the *Hammermill* test in our analysis, we noted that the company was hired by the borough as its official building inspector and, acting in that capacity, the company examined and approved construction drawings; recommended the issuance of building permits; and inspected the construction for which permits had been issued on behalf of the borough. This Court emphasized that Section 403.3(a) of the UCC, 34 Pa. Code §403.3(a), requires municipalities to employ or contract a building code official to enforce the Construction Act.[8] *Cornell Narberth*, 167 A.3d at 241. In carrying out its responsibilities as a building inspector, the inspection company acted on behalf of the borough in carrying out the borough's statutory and regulatory duties.[9] Based on these factors, we determined that the inspection

---

[8] The General Assembly enacted the Construction Act to establish uniform and modern construction standards throughout the Commonwealth. *See* Section 102 of the Construction Act, 35 P.S. §7210.102.

[9] The Court noted that the borough "is required by law to review and grant (or deny) building permits." *Cornell Narberth*, 167 A.3d at 238. The Court explained:

> Section 403.63(a) of the UCC, for example, provides that "[a] building code official shall grant or deny a permit application, in whole or in part, within 15 business days of the filing date or the

9

company was an "employee" of the borough for purposes of the Tort Claims Act. *Id.*

More recently, in *Spencer*, this Court engaged in an in-depth analysis of the *Hammermill* factors in determining whether a private inspection company (Construction Code Inspectors, Inc. (CCI)) that provided building inspection services for the township was an employee or independent contractor. The Court noted the significance of the requirement that the municipality must "employ or contract with a building code official to enforce the [Construction Act]." 34 Pa. Code §403.3(a). The Court reviewed the terms of the parties' agreement, which provided:

> CCI will, at no fee, assist [the t]ownship in (i) notification to applicants of non-compliance; (ii) letters of non-compliance to applicant and municipality; (iii) local appeals hearings and hearings at court of common pleas; and (iv) follow-up on court orders and compliance issues. Under the agreement, CCI is responsible to administer and enforce the appropriate building codes, review and issue permits, and serve as primary on-site inspector for UCC field inspections, all clearly under the authority of [the t]ownship. The fee structure for permits is set by

application is deemed approved." 34 Pa. Code §403.63. Similarly, Section 403.63(b) provides that "[a] building code official shall examine the construction documents and shall determine whether the construction indicated and described is in accordance with the [UCC] and other pertinent laws or ordinances as part of the application process." 34 Pa. Code §403.63(b). Section 403.64(a) states that "[a] construction code official shall inspect all construction for which a permit was issued." 34 Pa. Code §403.64(a). Further, Section 403.65(b) states that "[a] building code official shall issue a certificate of occupancy after receipt of a final inspection report that indicates compliance with the [UCC] and ordinance[.]" 34 Pa. Code §403.65(b).

*Id.* (emphasis omitted).

10

> agreement with [the t]ownship, and [CCI] must report all permitting activity each month and assist in enforcement actions.

*Spencer*, slip op. at 3 (internal citation omitted). The Court concluded that these factors demonstrated that CCI was a "non-traditional employee," not an independent contractor. *Id.* at 4.

Turning to the facts here, the Township appointed Richardson to serve as its building code official. Richardson submitted a proposal to the Township, which served as the basis to appoint him as the building code official. Reproduced Record (R.R.) at 9a, 44a-45a. The proposal clearly defined the job description as follows: "Job description shall include fulfilling the duties of the building code official as defined in Section 103 of [the Construction Act.[10]]" R.R. at 44a. In fact, the Township is statutorily obligated to retain a building code official and administer and enforce the provisions of the Construction Act and UCC as part of its regular business duties. Sections 501 and 502 of the Construction Act, 35 P.S. §§7210.501, 7210.502; 34 Pa. Code §403.3(a); *see Cornell Narberth*, 167 A.3d at 238.

---

[10] 35 P.S. §7210.103. Section 103 of the Construction Act defines "construction code official" as "[a]n individual certified by the Department of Labor and Industry in an appropriate category established pursuant to section 701(b)[, 35 P.S. §7210.701(b),] to perform plan review of construction documents, inspect construction or administer and enforce codes and regulations in such code category under this act or related acts." 35 P.S. §7210.103. In turn, Section 401.1 of the UCC defines "building code official" as:

> A construction code official, or the building code official's designee, who manages, supervises and administers building code enforcement activities under §401.7(a)(18) (relating to certification category specifications). Duties include, but are not limited to: management of building code enforcement activities; supervision of building inspectors or plan examiners; authorizing issuance of certificates of occupancy; issuance of building permits, violation notices and orders to vacate; and the initiation of prosecutions.

34 Pa. Code §401.1.

11

The proposal also stated that, as the building code official, Richardson "will file quarterly reports with the Department of Labor and Industry" and "shall be responsible for scheduling and submitting all inspection results to the municipality" on behalf of the Township. R.R. at 44a-45a. Richardson is responsible to administer and enforce the appropriate building codes, review and issue permits and serve as the Township's onsite inspector, all clearly under the Township's authority. In *Higby, Cornell Narberth*, and *Spencer*, such similar factors weighed heavily in favor of finding that the private inspection company was an employee, and not an independent contractor.

As reflected in the minutes from the Township's regular meeting of April 2, 2007, the supervisors voted to "formally appoint[] Richardson as [its] inspection service for at least a year." R.R. at 47a. Since that appointment, Richardson has continually served as the building code official for the Township without the need to go through a renewal process. R.R. at 36a. At all times relevant, Richardson has acted as the Township's building code official. As the trial court found, when Richardson served as the building inspector, he "was doing so solely on behalf of the [T]ownship based on an appointment by the [T]ownship as opposed to work performed under a contract." Trial Court Opinion, 7/12/19, at 9; *see* R.R. 35a (no contract existed between the Township and Richardson). The Judicial Code's definition of "employee" specifically refers to "appointed officers" acting on behalf of a government unit. 42 Pa. C.S. §8501.

In addition, the Township had the ability to terminate Richardson. R.R. at 40a-41a. The Township possessed the authority to direct and control Richardson's duties, fees, and assigned duties and ensure compliance with the Construction Act and UCC. Although the Township did not closely monitor Richardson's duties,

12

particularly given his specialized expertise and certifications as a building code official, it retained enough control by collecting the fees, keeping a percentage, issuing payments to Richardson, making applications available to the public and directing Richardson to issue stop work orders of construction occurring without requisite building permits. These additional indicators also point toward finding that Richardson is a non-traditional employee.

Notwithstanding, we also recognize the existence of some factors that mitigate against the finding that Richardson served as employee. For example, Richardson set his own prices, used his own forms and documents, scheduled review of plans and drawings and met with those seeking building permits on his own, and issued them without Township approval. However, on balance, these factors do not outweigh the foregoing. Although Richardson's relationship with the Township was not exclusive, it is common practice for small municipalities to retain its code officials in this manner, as it is more cost effective than having full-time employees on the payroll providing such services. Therefore, this factor is not dispositive.

For these reasons, we conclude that the trial court correctly determined that Richardson acted on behalf of the Township as an "employee," and as such is entitled to governmental immunity under the Tort Claims Act. Accordingly, we affirm the trial court's grant of summary judgment in favor of Richardson.

_____
MICHAEL H. WOJCIK, Judge

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anna Oakes, Individually and as : 
Administratrix of the Estate of : 
Pheylan Marie Cline, Deceased, : 
               : 
             Appellant : 
               : 
          v. : No. 1368 C.D. 2019
               : 
Jeff Richardson, Individually and : 
Richardson Inspection Services, LLC : 

# O R D E R

AND NOW, this 9th day of July, 2020, the order of the Court of Common Pleas of Mercer County, dated July 12, 2019, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge