IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cornell Narberth, LLC,           :
                   Appellant     :
                                     :
             v.                   :   No. 1577 C.D. 2016
                                     :   Argued: May 1, 2017
Borough of Narberth, Montgomery  :
County, Pennsylvania and Yerkes    :
Associates, Inc., C. O'Brien        :
Architects, Inc. and Cheryl A. O'Brien  :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT                FILED: July 14, 2017

       Cornell Narberth, LLC (Cornell) appeals an order of the Court of Common Pleas of Montgomery County (trial court) granting summary judgment to the Borough of Narberth (Borough) and its building inspector, Yerkes Associates, Inc. (Yerkes). Cornell argues that the trial court erred by finding that its breach of contract, promissory estoppel, and negligent misrepresentation claims were barred by the governmental immunity provisions under the act commonly known as the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa. C.S. §§8541-8542, and the related official immunity provisions.[1] Cornell also argues that the trial

---

[1] Section 8541 of the Tort Claims Act provides: "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. C.S. §8541. Section 8545 of the Judicial Code further provides: "[a]n employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter." 42 Pa. C.S. §8545.

court erred in holding that its evidence was insufficient to survive summary judgment on its equal protection claim. For the following reasons, we affirm.

**Background**

Cornell, a real estate developer, applied to the Borough for building permits to construct detached single-family homes on a four-lot subdivision known as Narberth Arbors. Before submitting the permit applications, Cornell's representatives met with William Martin, the Borough manager, and Robert Loeper, a representative of Yerkes, which does building inspections for the Borough, to discuss the construction of the residences. The Borough informed Cornell that the local ordinances did not require installation of an automatic sprinkler system in a detached single-family residence.

Thereafter, Cornell submitted construction drawings to Yerkes showing that the homes would be built with pre-engineered wood roof trusses and would not have automatic sprinklers. Third Amended Complaint ¶13; Reproduced Record at 1286a (R.R. ___). Yerkes reviewed and approved the drawings. The Borough then issued building permits for each residence. The permits, which did not mention sprinklers, were issued "subject to the provisions of the Borough Ordinances." *Id.*, Exhibit A; R.R. 1305a. Cornell paid the required fees associated with the permits and began construction.

A representative from Yerkes visited the site regularly and inspected each stage of the construction. Third Amended Complaint ¶20; R.R. 1287a. At no time during these inspections did anyone from Yerkes inform Cornell that it was required to install automatic sprinklers. *Id.*, ¶21; R.R. 1287a. After Cornell completed the Lot 1 residence, Yerkes did a final inspection and notified the Borough to issue a certificate of occupancy. *Id.*, ¶23; R.R. 1287a.

2

The Borough refused to issue the certificate of occupancy because Cornell had not installed automatic sprinklers, which are required for homes constructed with pre-engineered wood roof trusses. By letter dated September 15, 2010, Martin, the Borough manager, informed Cornell that the sprinkler systems were required under Ordinance No. 843, the Fire Prevention Code (Fire Code), which provides in pertinent part:

> (1) All new construction except single family detached and single family semi-detached dwellings located within the Borough will be equipped with full sprinkler systems.
>
>> a. Exception: if a single family detached or single family semi-detached dwelling is constructed with wooden truss floors or roof supports the structure must be sprinklered.

Third Amended Complaint, Exhibit B, at 1; R.R. 1311a.

Martin's letter further explained that "[a]lthough the Borough has adopted the Uniform Construction Code ("UCC"),[2] the provisions of the UCC do

---

[2] 34 Pa. Code §§401.1-405.42. By way of background, in 1999, the Pennsylvania General Assembly enacted the Pennsylvania Construction Code Act (Act), Act of November 10, 1999, P.L. 491, *as amended*, 35 P.S. §§7210.101-7210.1103, to establish uniform and modern construction standards throughout the Commonwealth. *See* Section 102 of the Act, 35 P.S. §7210.102. The Act authorized the Department of Labor and Industry (Department) to promulgate regulations, and the Department did so on April 12, 2002, and January 9, 2004. *See* Section 105 of the Act, 35 P.S. §7210.105. These regulations are known as the Uniform Construction Code (UCC).

The Act required municipalities to adopt the UCC as their municipal building code within 90 days after the promulgation of the UCC. Section 501(a) of the Act, 35 P.S. §7210.501(a). Further, the Act provides that the UCC preempts any construction standards established in local ordinances that are different from those in the UCC. Section 104(d) of the Act, 35 P.S. §7210.104(d). However, local ordinances, in certain circumstances, may supplement the rules in the UCC. Section 303(b) of the Act, 35 P.S. §7210.303(b) ("Municipal building code ordinances in effect on July 1, 1999 … which contain provisions which equal or exceed the specific **(Footnote continued on the next page . . .)**

3

not supersede ordinances in effect on July 1, 1999 with provisions which equal or exceed the specific requirements of the UCC." *Id.*; R.R. 1311a. The letter acknowledged that Cornell's building permits were issued in error and stated that "[i]f the violation [of the Fire Code] is not corrected immediately, the Borough will consider all appropriate remedies available, including revocation of the previously issued building permits." *Id*. at 2; R.R. 1312a.

Yerkes refused to inspect the remaining residences in the subdivision until Cornell installed automatic sprinkler systems. As a result, the construction on Lots 2, 3, and 4 was halted, which "jeopardiz[ed] closings on the Lot 3 and 4 [r]esidences." Third Amended Complaint ¶35; R.R. 1289a. One couple "sold their home in reliance on being able to move into their completed [r]esidence and was thereafter forced to lease-back their prior residence." *Id*., ¶39; R.R. 1290a. Similarly, the Lot 1 purchaser had no place to live as a result of the Borough's refusal to issue a certificate of occupancy for that residence. *Id*., ¶36; R.R. 1289a. Cornell alleges that as a result of the actions of the Borough and Yerkes, it "had no other option but to install the sprinkler systems in the [r]esidences, or face breach of its agreements with the [purchasers]." *Id*., ¶45; R.R. 1291a. Cornell alleges its damages include, but are not limited to, the costs of installing the sprinklers and relocating the purchasers of the residences to other housing units. *Id*., ¶48-50; R.R. 1291a.

---

**(continued . . .)**
requirements of the regulations promulgated under this act shall remain in effect until such time as any such provisions fail to equal or exceed the minimum requirements of the regulations promulgated under this act…."). In 2004, the Borough of Narberth adopted the UCC as its municipal building code while retaining its ordinances in effect in 1999, including the Fire Code, that had stricter standards. Complaint, Exhibit D, at 2; R.R. 47a.

Cornell's third amended complaint[3] contained five counts: (1) breach of contract against the Borough and Yerkes; (2) promissory estoppel against the Borough and Yerkes; (3) negligent misrepresentation against Yerkes; (4) violation of the equal protection clause of the U.S. Constitution under 42 U.S.C. §1983 against the Borough and Yerkes; and (5) violation of the equal protection clause of the Pennsylvania Constitution.[4] Yerkes then filed a joinder complaint against C. O'Brien Architects, Inc., and its principal, Cheryl O'Brien, alleging negligent misrepresentation.

The parties engaged in discovery, which included depositions of Martin, Loeper, and Frederick Hansell, the Borough's Assistant Manager. At the conclusion of discovery, the Borough and Yerkes filed motions for summary judgment, on which the trial court heard oral argument.

In support of its motion for summary judgment, the Borough argued that "despite being couched as contractual or quasi-contractual claims," the allegations in Cornell's complaint were "clearly based upon negligence" and, thus, barred by the Tort Claims Act. Borough Motion for Summary Judgment ¶33; R.R. 2483a-84a. The Borough also argued that the complaint did not state an equal protection claim under 42 U.S.C. §1983 because its assertion "is unproven at the end of discovery." *Id*., ¶35; R.R. 2484a.

---

[3] Initially, Cornell filed a complaint in mandamus and a petition seeking preliminary injunctive relief. During the course of the litigation, Cornell amended the complaint three times and elected to withdraw its request for mandamus relief.

[4] In ruling on the Borough and Yerkes' preliminary objections to Cornell's complaint, the trial court dismissed Cornell's equal protection claim under the Pennsylvania Constitution. That claim is no longer at issue.

5

Yerkes argued that it acted as the Borough's employee in its capacity as the appointed building inspector; therefore, it was immune from liability under the Tort Claims Act. In support, Yerkes cited the deposition testimony of Martin, who testified:

> [Question]: From the time that Yerkes was appointed as the Narberth Borough code official prior to 2010, until the present they have always been acting in the capacity as the appointed Narberth Borough code official?
>
> [Martin]: Yes, they have.
>
> [Question]: And with respect to all of the services that they have provided in connection with the Cornell project that is at issue in this case, all of those services were provided in their capacity as the Narberth Borough building code official?
>
> [Martin]: Yes, they were.

Martin Deposition at 110; R.R. 6291a.

Cornell responded that the Tort Claims Act provides no immunity for non-tort claims such as breach of contract and promissory estoppel. Cornell argued that the building permits constituted contracts between the parties and made no mention of sprinklers. By failing to issue the certificate of occupancy in accordance with the permits, Cornell argued, the Borough and Yerkes breached the contract.

As to the promissory estoppel claim, Cornell explained that the Borough and Yerkes informed Cornell at the pre-construction meeting that automatic sprinklers were not required in the planned residences and affirmed that representation through their subsequent actions, *i.e.*, reviewing and approving the construction drawings, issuing the building permits, inspecting the construction site, and allowing the construction to continue. Cornell argued that the promise

6

made by the Borough and Yerkes is enforceable because Cornell detrimentally relied on it.

Cornell further argued that its negligent misrepresentation claim against Yerkes was not shielded by the Tort Claims Act. Cornell asserted that our Supreme Court has "created a cause of action to a third party 'where information is negligently supplied by one in the business of supplying information, and where it is foreseeable that the information will be used and relied upon by third persons.'" *Id*. at 9; R.R. 3604a.

With respect to its equal protection claim under 42 U.S.C. §1983, Cornell pointed to its letter of December 29, 2010, that it sent to the Borough and the Fire Marshal. The letter identified a number of residences and educational institutions within the Borough that should have been constructed with fire sprinklers but were not. The letter requested an investigation of each of those properties. However, the Borough chose not to require these properties to correct the violations with the installation of automatic sprinklers. In support, Cornell cited Martin's deposition testimony:

> [Question]: We have marked a document … on Cornell Homes letterhead dated December 29, 2010, Mr. William Henderson, Jr., Narberth Fire Company President, signed by Mark McSorley … cc'd to the Narberth Borough Council Members and Thomas Grady, Mayor of Narberth. Have you seen this letter before?
>
> * * *
>
> [Martin]: It was in the file, yes. I can't recall when I saw it, no.
>
> * * *

7

[Question]: So you didn't do anything then with respect to following up with any of the properties that are identified here in Mr. McSorley's letter?

[Martin]: I did not, no.

[Question]: Do you know if anybody in the Borough did?

[Martin]: No, I don't know that they did.

Martin Deposition at 105-06; R.R. 6286a-87a. Cornell argued that the Borough's inaction with respect to those other properties is inconsistent with "its claim that life safety issues were of such paramount concern." Cornell's Brief in Opposition to the Borough's Motion for Summary Judgment at 19; R.R. 3326a. Cornell argued that there is no rational basis for the disparate treatment.

The trial court granted the Borough's and Yerkes' motions for summary judgment. The trial court rejected Cornell's contract claims for the stated reason that the "promise" made by the Borough and Yerkes was unenforceable. Relying on Section 403.63(f) of the UCC, which provides that a building code official may suspend or revoke a permit "when the permit is issued in error, on the basis of inaccurate or incomplete information or in violation of any act, regulation, ordinance or the [UCC]," 34 Pa. Code §403.63(f), the trial court concluded that "the permits were freely revocable and thus any 'contract' created between those parties was illusory." Trial Court op., 8/25/2016, at 8.

The trial court also dismissed Cornell's promissory estoppel claim, concluding that it was in actuality a negligence claim barred by the Tort Claims Act. Citing this Court's decisions in *Peluso v. Kistner*, 970 A.2d 530 (Pa. Cmwlth. 2009), and *Gallagher v. Lynch*, (Pa. Cmwlth., No. 2359 C.D. 2011, filed August 21, 2012), the trial court noted that "the substance of a plaintiff's allegations, rather than the label that a plaintiff has affixed to a particular cause of action," determines

8

whether a claim is barred by governmental immunity. Trial Court op., 8/25/2016, at 11. The trial court concluded that "[e]ven though the pleadings [in the instant case] speak of promissory estoppel, negligence is the gist of the action." *Id*. at 12. The trial court held that Cornell's claim did not fall under any of the exceptions to immunity in Section 8542 of the Tort Claims Act, 42 Pa. C.S. §8542.

Similarly, the trial court held that Cornell's negligent misrepresentation claim against Yerkes was barred by the Tort Claims Act. Finding that Yerkes acted as an employee of the Borough, the trial court reasoned:

> It is undisputed that Yerkes was the official building inspector for the Borough during the relevant times. When Yerkes performs building inspections, it acts on behalf of the Borough, its employer. Therefore, it is immune from negligent representation liability under the [Tort Claims Act].

Trial Court op., 8/25/2016, at 13.

Finally, the trial court dismissed Cornell's equal protection claim under 42 U.S.C. §1983, concluding that Cornell "failed to adduce sufficient evidence to survive summary judgment." Trial Court op., 8/25/2016, at 15. The trial court found:

> [T]he only substantive evidence is a letter written by Cornell representatives to the Borough Fire Marshal and Borough Council referencing six permits that the Borough has allegedly granted in violation of Narberth Ordinance No. 843. Only two of those instances involve a property with wooden trusses, and only one involves roof trusses. The other four instances involve alleged violations of other provisions of the ordinance.

*Id.* The trial court reasoned that the letter "is barely a scintilla of evidence and would clearly not survive trial on the merits." *Id.* Further, enforcement of the ordinance "may be relaxed at the discretion of the Borough." *Id.* Therefore, the

9

trial court concluded, summary judgment was appropriate. Cornell now appeals to this Court.[5]

## Appeal

On appeal, Cornell raises four issues. First, it argues that the trial court erred in holding that the building permits did not create a "legally binding contract" between Cornell and the Borough and Yerkes. Cornell Brief at 18. Second, it argues that the trial court erred in ruling that its promissory estoppel claim is really a tort action that is barred by the Tort Claims Act. Third, Cornell argues that the trial court erred in dismissing its negligent misrepresentation claim against Yerkes, which, it asserts, is "an independent professional liability claim" that is "not subsumed by the Tort Claims Act." *Id*. at 45. Fourth, Cornell argues that the trial court erred in dismissing its equal protection claim under 42 U.S.C. §1983 "in the face of clear, undisputed testimony from [the] Borough's own employees that Cornell was treated as a class of one." *Id*. at 50.

"A motion for summary judgment may be granted only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Flood v. Silfies*, 933 A.2d 1072, 1074 (Pa. Cmwlth. 2007). A fact is material if it directly affects the disposition or the outcome of a case. *Department of Environmental Protection v. Delta Chemicals, Inc.*, 721 A.2d 411, 416 (Pa. Cmwlth. 1998). The moving party has the burden of proving that there is no genuine issue of material fact. *Laich v. Bracey*, 776 A.2d 1022, 1024 (Pa.

---

[5] This Court's scope of review of a trial court's order granting summary judgment is plenary and we apply the same standard for summary judgment as does the trial court. *Cochrane v. Kopko*, 975 A.2d 1203, 1205 (Pa. Cmwlth. 2009). We reverse a trial court's order granting summary judgment only where it is established that the trial court committed an error of law or abused its discretion. *Id.*

10

Cmwlth. 2001). The right to judgment must be clear and free from doubt. In considering the merits of a motion for summary judgment, a court must "view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Flood*, 933 A.2d at 1074 (quotations omitted). We now consider the parties' arguments in light of the above-referenced principles and this Court's standard of review.

## Breach of Contract Claim

Cornell argues that the building permits issued by the Borough and Yerkes to Cornell constitute an express contract. Specifically, Cornell asserts that it made an offer to the Borough and Yerkes to construct four homes in the Borough in accordance with the construction plans it submitted; that it paid permit fees in excess of $6,000 as consideration for the contract; and that the Borough and Yerkes accepted Cornell's offer by issuing permits to Cornell for the construction of the homes based on the submitted and approved plans. Cornell Brief at 19.

Alternatively, Cornell argues that "an implied-in-fact contract nevertheless exists," which is evidenced by the parties' actions. Cornell Brief at 20-21. Contrary to the trial court's finding that the building permits represent an illusory and unenforceable promise, Cornell argues that the permits are, "at the very least, voidable contracts." *Id*. at 26. Cornell asserts that, "[i]n order for the [p]ermits to be unenforceable … the [p]ermits would have to have actually been revoked and evidence presented showing that the [p]ermits were validly revoked[.]" *Id*. at 24. Because the Borough and Yerkes did not revoke or suspend the permits, they "accept[ed] the benefits flowing from [the contract]" and, therefore, effectively ratified a voidable contract. *Id*. at 26. Cornell argues that it

11

has a vested right "to complete the work in accordance with the approved plans and issued permits," *id*. at 28, and the Borough and Yerkes breached the contract by refusing to issue the certificates of occupancy.

To establish a contract, all essential elements must exist, including consideration. The requirement of consideration "is nothing more than a requirement that there be a bargained for exchange." *Department of Transportation v. First Pennsylvania Bank*, 466 A.2d 753, 754 (Pa. Cmwlth. 1983). "There can obviously be no such bargained for exchange if one of the parties is already legally bound to render the performance promised." *Id*. "A promise to do what the promisor is already bound to do cannot be a consideration, for if a person gets nothing in return for his promise but that to which he is already legally entitled, the consideration is unreal." *In re Commonwealth Trust Company of Pittsburgh*, 54 A.2d 649, 651 (Pa. 1947).

In *First Pennsylvania Bank*, a bank financed the purchase of a new automobile from Murphy Ford and acquired a first lien on the vehicle. Murphy Ford then requested that the Department of Transportation record the lien pursuant to former Section 1133(c) of the Vehicle Code,[6] which provided that the Department "shall endorse on the existing certificate of title, or on a new certificate which it then issues, the name and address of all secured parties and shall mail the certificate of title to the first lienholder named in the certificate." *First Pennsylvania Bank*, 466 A.2d at 754 (quoting former 75 Pa. C.S. §1133). The Department, however, did not endorse the title and mailed the certificate to the

---

[6] Section 1133 of the Vehicle Code was deleted by the Act of June 8, 2001, P.L. 123, effective July 1, 2001.

12

car's owner, instead of the bank. The owner then sold the car, stopped making payments on his loan, and moved out of state.

The bank requested the Department to pay the outstanding balance of the loan, alleging that it was a third-party beneficiary of a contract between the Department and Murphy Ford. The bank argued that the Department breached the contract by failing to record the lien and mail the title to the proper party. Holding that there was no contract between the Department and Murphy Ford, this Court found that the Department was legally required by former Section 1133(c) of the Vehicle Code to endorse the title and mail it to the first lienholder. "There was, therefore, no bargained for exchange between Murphy Ford and [the Department], and hence, no consideration." *Id.*

Likewise, here, the Borough is required by law to review and grant (or deny) building permits. Section 403.63(a) of the UCC, for example, provides that "[a] building code official *shall* grant or deny a permit application, in whole or in part, within 15 business days of the filing date or the application is deemed approved." 34 Pa. Code §403.63(a) (emphasis added). Similarly, Section 403.63(b) provides that "[a] building code official *shall* examine the construction documents and *shall* determine whether the construction indicated and described is in accordance with the [UCC] and other pertinent laws or ordinances as part of the application process." 34 Pa. Code §403.63(b) (emphasis added). Section 403.64(a) states that "[a] construction code official *shall* inspect all construction for which a permit was issued." 34 Pa. Code §403.64(a) (emphasis added). Further, Section 403.65(b) states that "[a] building code official *shall* issue a certificate of occupancy after receipt of a final inspection report that indicates

13

compliance with the [UCC] and ordinance[.]" 34 Pa. Code §403.65(b) (emphasis added).

The UCC also requires a developer to obtain building permits and pay any permit fees before commencing construction. Section 403.62(a) of the UCC provides that "[a]n owner or authorized agent who intends to construct ... a residential building … *shall* first apply to the building code official and *obtain the required permits* under §403.62a (relating to permit application)." 34 Pa. Code §403.62(a) (emphasis added). Section 403.63(k) provides that "[a] permit is not valid until the required fees are collected[.]" 34 Pa. Code §403.63(k).

In short, the UCC required Cornell to obtain the building permits and pay the permit fees before constructing the Narberth Arbors homes. Similarly, it required the Borough and Yerkes to examine the construction documents; issue the building permits; inspect construction; and issue a certificate of occupancy. "Where a legal obligation exists, a cumulative promise to perform it, unless upon a new consideration, is a nullity. Such promise adds nothing to and takes nothing from the original obligation." *In re Commonwealth Trust Company of Pittsburgh*, 54 A.2d at 651 (internal quotations omitted). Because a promise to perform an obligation that the promisor is already legally bound to do cannot be consideration, we conclude that the building permits did not create a contractual relationship among Cornell, the Borough, and Yerkes.

Further, our Supreme Court, in *Commonwealth v. Devlin*, observed:

> A "building permit" is not a contract; it is exactly what it says it is–a *permit* to erect a building according to the plans and specifications submitted with the application therefor. It does not require the property owner to erect such a building, but only permits him to do so. For any reason satisfactory to himself he may change his mind and not begin the construction, and his

14

decision in this respect will not be reviewable by the inspector or the city; or, having started, may stop before the building is completed, in which event no authority can compel him to go on.

158 A. 161, 163 (Pa. 1932) (emphasis original). Based on the foregoing analysis, we conclude that the trial court did not err in granting summary judgment in favor of the Borough and Yerkes on Cornell's breach of contract claim.

### Promissory Estoppel Claim

Cornell argues, next, that the trial court erred in holding its promissory estoppel claim to be a "disguised" tort claim. Cornell asserts that a promissory estoppel claim "arise[s] from [an] implied contract[], and accordingly, sound[s] in contract not tort." Cornell Brief at 41. Cornell sought damages under a theory of detrimental reliance, and the Tort Claims Act does not apply to such a claim. Cornell argues that its detrimental reliance on the assurances by the Borough and Yerkes that the homes would not require sprinklers created "the consideration necessary for the formation of a contract, the breach of which becomes actionable." *Id*. at 41.

We begin with a review of the principles of detrimental reliance, which this Court has explained "is another name for promissory estoppel." *Peluso v. Kistner*, 970 A.2d 530, 532 (Pa. Cmwlth. 2009) (quoting *Travers v. Cameron County School District*, 544 A.2d 547, 550 (Pa. 1988)). Promissory estoppel provides an equitable remedy to enforce a "contract-like promise that would be otherwise unenforceable under contract law principles." *Id.* In promissory estoppel, the aggrieved party must show that "(1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action

15

in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise." *Crouse v. Cyclops Industries*, 745 A.2d 606, 610 (Pa. 2000). These factors are strictly enforced to guard against the "loose application" of promissory estoppel. *Peluso*, 970 A.2d at 533.

Cornell argues that all of the promissory estoppel elements are present here. The Borough and Yerkes promised Cornell that it could build the Narberth Arbors homes without installing automatic sprinklers; in reliance Cornell built the homes without sprinklers; the Borough and Yerkes did not keep their promise because they later demanded the installation of sprinklers; and Cornell incurred substantial expenses to install them. Cornell argues that "[j]ustice will only be served if Cornell is compensated by [the] Borough and Yerkes for these unexpected substantial additional expenses." Cornell Brief at 43.

A plaintiff cannot defeat the defense of governmental immunity by couching a tort claim as a breach of contract claim. *Matarazzo v. Millers Mutual Group, Inc.*, 927 A.2d 689, 693 (Pa. Cmwlth. 2007). Cornell's claim lacks a necessary prerequisite for asserting promissory estoppel: a contract-like promise. The Borough and Yerkes promised, at most, to perform an obligation that they were legally bound to perform by the UCC. A promise to perform a legal obligation is not a contract-like promise.

The facts here are very similar to those in *Gallagher v. Lynch*, (Pa. Cmwlth., No. 2359 C.D. 2011, filed August 21, 2012). In *Gallagher*, the township issued landowners a permit for an on-lot sewage disposal system to serve the home they planned to build, and the landowners began construction. Months later, the Pennsylvania Department of Environmental Protection revoked the permit. The

16

landowners sued the sewage enforcement officer and the township for damages incurred as a result of their detrimental reliance on the permit.

The trial court in *Gallagher* concluded that the landowners' claim, labeled detrimental reliance or promissory estoppel, sounded in tort rather than contract. The landowners' allegations set forth the elements of a negligence claim, *i.e.*, a duty to conduct a site examination and to issue a permit in a competent, non-negligent manner; a breach of that duty of care; and damages resulting from such breach. The trial judge, therefore, dismissed the landowners' claim under the immunity provisions of the Tort Claims Act. This Court adopted the trial court's opinion with the above reasoning.

Likewise, here, Cornell's claim, although labeled as promissory estoppel, sounds in tort. The factual allegations in Cornell's complaint set forth the elements of a negligent misrepresentation claim, which is "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999). Accordingly, the trial court did not err in holding that Cornell's promissory estoppel claim against the Borough is barred by the immunity provisions of the Tort Claims Act, 42 Pa. C.S. §§8541-8542.

Because the Borough and Yerkes did not make a contract-like promise and because the factual allegations in Cornell's complaint set forth a negligent misrepresentation claim, we conclude that the trial court did not err in granting summary judgment to the Borough and Yerkes on Cornell's promissory estoppel claim.

17

## Negligent Misrepresentation Claim against Yerkes

Cornell argues that the trial court erred by dismissing its negligent misrepresentation claim against Yerkes, which is "an independent professional liability claim … not subsumed by the Tort Claims Act." Cornell Brief at 45. Yerkes responds that as the appointed building inspector, it is an employee of the Borough; therefore, "any action or inaction by Yerkes while acting in the official capacity of the Borough building inspector would be immune from suit under the [Tort Claims Act]." Yerkes Brief at 10.

In support, Yerkes cites to this Court's decision in *Higby Development, LLC v. Sartor*, 954 A.2d 77 (Pa. Cmwlth. 2008).[7] In that case, a real estate developer sued several township employees along with Yerkes Associates, Inc., which acted as the township's code enforcement officer, and Russel Yerkes, the individual who performed the duties of the township's code enforcement officer, alleging that they engaged in tortious conduct to impede its real estate development. Russel Yerkes countered that he was an employee of the township and, thus, immune from liability under the Tort Claims Act. The trial court ruled in favor of Russel Yerkes.

Affirming the trial court, this Court examined Section 8501 of the Judicial Code, which defines the term "employee" as follows:

> *Any person who is acting or who has acted on behalf of a government unit* whether on a permanent or temporary basis, whether compensated or not and whether within or without the

---

[7] In 2010, the Supreme Court vacated this Court's order in *Higby* and remanded the matter to the trial court for further proceedings on the intentional tort claims. *Higby Development, LLC v. Sartor*, 991 A.2d 305 (Pa. 2010). Notably, the Supreme Court did not reverse this Court's holding that a third party who acts on behalf of a government unit in performing governmental functions is immune from liability under the Tort Claims Act.

territorial boundaries of the government unit, including any volunteer fireman and any elected or appointed officer, member of a governing body or other person designated to act for the government unit. Independent contractors under contract to the government unit and their employees and agents and persons performing tasks over which the government unit has no legal right of control are not employees of the government unit.

42 Pa. C.S. §8501 (emphasis added). We found that the definition does not require a person to be "an employee in the traditional sense, but only that the employee is acting on behalf of the governmental entity." *Higby*, 954 A.2d at 85. In support, this Court cited *Walls v. Hazleton State Hospital*, 629 A.2d 232 (Pa. Cmwlth. 1993). There, a patient brought a malpractice claim against a doctor, who was employed by a medical group retained as an independent contractor to provide medical services to a state hospital. The *Walls* court held that although the doctor was not a traditional employee, he was an "employee" of the Commonwealth because he was a person who "acted on behalf of a government unit whether on a permanent or temporary basis." *Id.* at 236-37 (citing 42 Pa. C.S. §8501). The *Higby* court therefore held:

> Because Yerkes was clearly acting as the Code Enforcement Officer on behalf of the Township in order to determine whether the next phase of construction could occur, and clearly did not make final decisions of Supervisors as he only recommended to them whether or not [Certificates of Occupancy] should be issued, Yerkes was an "employee" for purposes of the Tort Claims Act and was entitled to governmental immunity.

*Higby*, 954 A.2d at 86.

Likewise, here, Yerkes Associates was hired by the Borough as its official building inspector. Acting in that capacity, Yerkes examined and approved

19

construction drawings; recommended the issuance of building permits; and inspected the construction for which permits had been issued. Section 8501 of the Judicial Code defines "employee" as "any person who is acting or who has acted on behalf of a government unit[.]" 42 Pa. C.S. §8501. The definition does not require a person to be "an employee in the traditional sense, but only that the employee is acting on behalf of the governmental entity." *Higby*, 954 A.2d at 85. Notably, Section 403.3(a) of the UCC requires that a building code official be appointed to enforce the Construction Code Act. 34 Pa. Code §403.3(a). Yerkes, in carrying out its responsibilities as a building code official, acted on behalf of the Borough. Consistent with our decision in *Higby*, we conclude that Yerkes acted as an "employee" of the Borough for purposes of the Tort Claims Act.

Cornell argues that our Supreme Court's decision in *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270 (Pa. 2005), provides "a legal basis for [its] negligent misrepresentation claim against Yerkes." Cornell Brief at 49. In that case, a school district hired an architectural firm to design a new school building. Relying on the architect's drawings and plans, a construction company submitted a bid for general construction work on the project. The school district awarded the company the contract, and construction began. The company later found that the architect's drawings and plans contained inaccurate information, which substantially increased construction costs. The company sued the architect for negligent misrepresentation under Section 552 of the Restatement (Second) of Torts (Restatement).[8] The trial court dismissed the complaint, holding

---

[8] Section 552 of the Restatement (Second) of Torts provides:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information

**(Footnote continued on the next page . . .)**

20

that the architect owed no duty to the company. The Superior Court affirmed. The Supreme Court reversed, finding that "it is reasonable to hold [architects and other design] professionals to a traditional duty of care for foreseeable harm." *Bilt-Rite Contractors*, 866 A.2d at 286. The Court recognized that Section 552 of the Restatement "sets forth the parameters of a duty owed when one supplies information to others, for one's own pecuniary gain, where one intends or knows that the information will be used by others in the course of their own business activities." *Id.* at 285-86.

Cornell argues that under *Bilt-Rite Contractors*, Yerkes should be found liable because it "supplies information to others for personal gain," and Cornell relied on Yerkes' information "to its distinct detriment." Cornell Brief at 49. Cornell's reliance on *Bilt-Rite Contractors* is misplaced. Unlike *Bilt-Rite Contractors*, the issue in the instant case is not whether Yerkes owed a duty of care

---

**(continued . . .)**

for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

RESTATEMENT (SECOND) OF TORTS §522 (1977).

21

to Cornell or whether Cornell established a *prima facie* case of negligence. Rather, the trial court here granted summary judgment to Yerkes based on its affirmative defense of governmental immunity, which is separate from the merits of Cornell's cause of action. An affirmative defense bars recovery even when the plaintiff has established a *prima facie* case. Notably, the architectural firm in *Bilt-Rite Contractors* did not raise a defense of governmental immunity or claim it was an employee of the school district. *Bilt-Rite Contractors*, therefore, is inapposite.

For all these reasons, we conclude that the trial court did not err in granting summary judgment in favor of Yerkes on Cornell's negligent misrepresentation claim.

### Equal Protection Claim

Finally, Cornell challenges the trial court's conclusion that Cornell did not make a case on its equal protection claim under 42 U.S.C. §1983. Cornell asserts that the "undisputed facts and the admissions of [the] Borough" establish a violation of Cornell's equal protection rights under the "class of one" theory. Cornell Brief at 52.

> Section 1983 provides, in pertinent part:
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law….

42 U.S.C. §1983. To hold a state actor liable under Section 1983, "a plaintiff must prove a deprivation of a right guaranteed by the Constitution or the Laws of the United States by a defendant acting under the color of law." *Pettit v. Namie*, 931

22

A.2d 790, 801 (Pa. Cmwlth. 2007). "Section 1983 does not create substantive rights but, rather, is the vehicle for vindicating rights conferred in the United States Constitution or in federal statutes." *Jae v. Good*, 946 A.2d 802, 809 (Pa. Cmwlth. 2008).

Cornell asserts that the Borough and Yerkes deprived it of its right to equal protection under the law guaranteed by the Fourteenth Amendment to the U.S. Constitution.[9] Where the plaintiff does not allege membership in a protected class, he may assert an equal protection claim under the "class of one" theory. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). A plaintiff bringing a "class of one" claim must demonstrate that (1) the defendant treated him differently from others similarly situated; (2) the defendant did so intentionally; and (3) any differential treatment was without rational basis. *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). A "class of one" claim, like any equal protection claim evaluated under rational basis review, cannot succeed "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller v. Doe*, 509 U.S. 312, 320 (1993) (quotation omitted).

Cornell argues that it presented sufficient evidence to support an equal protection claim under the "class of one" theory. Cornell points to the deposition testimony of Frederick Hansell, the Borough's Assistant Manager, who testified in pertinent part:

---

[9] The equal protection clause of the Fourteenth Amendment provides that "[n]o state shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, §1.

23

[Question]: To your knowledge, the four lots of the Narberth Arbors project … are the only four residences where the borough has required fire sprinklers?

[Hansell]: Yes.

\* \* \*

[Question]: Are you aware of any residential construction in the borough ever, other than these four lots, where the borough has required fire sprinklers?

[Hansell]: No.

Hansell Deposition at 123, 126; R.R. 5010a, 5013a. Cornell asserts that the Borough "intentionally discriminated against Cornell by requiring Cornell, and only Cornell, to install automatic sprinklers in the Narberth Arbors homes." Cornell Brief at 52.

Cornell sent a letter to the Borough and the Fire Marshal that identified a number of properties within the Borough that are in violation of the Fire Code by not having sprinklers. In addition, Martin testified that he did not investigate those violations. Cornell argues this evidence demonstrated disparate treatment, which violated its right to equal protection of the laws.

It is well established that "issue spotting without analysis or legal citation to support an assertion precludes our appellate review of [a] matter." *Boniella v. Commonwealth*, 958 A.2d 1069, 1072 n.8 (Pa. Cmwlth. 2008). *See also* Pa. R.A.P. 2119(a) (requiring argument of issues to be "followed by such discussion and citation of authorities as are deemed pertinent."). The evidence cited by Cornell relates to the Borough, but it has nothing to do with Yerkes. Cornell has not cited any evidence that Yerkes was involved in the alleged disparate treatment; its mere assertion of error does not suffice.

24

We consider, next, the trial court's entry of summary judgment in favor of the Borough on Cornell's equal protection claim. A municipality is a "person" that can be sued directly under Section 1983 and be held liable in certain circumstances. *Arocho v. County of Lehigh*, 922 A.2d 1010, 1021 (Pa. Cmwlth. 2007) (citing *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978)). A municipality cannot, however, be held liable under Section 1983 on a *respondeat superior* theory. *Id.* (citing *Monell*, 436 U.S. at 691). "Rather, liability will be imposed when the municipality implements an official policy that is either unconstitutional on its face or is the 'moving force' behind the constitutional tort of one of its employees." *Id.* (citing *Monell*, 436 U.S. at 694). "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). In the absence of an official policy, a municipality may also face liability under Section 1983 "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell*, 436 U.S. at 690-91.

This Court has held that "a municipality cannot be held liable in a Section 1983 action in the absence of a predicate unconstitutional act by the municipality's employee." *Arocho*, 922 A.2d at 1022. "Even if the municipality's actions are arbitrary or even conscience shocking, in a constitutional sense the municipality cannot be held liable under Section 1983." *Id.* (internal quotations omitted).

Cornell argues that the Borough "has chosen not to require retroactive installation of automatic sprinklers on a number of similarly situated properties within the Borough, *i.e.* other buildings constructed with pre-engineered wood roof trusses." Cornell Brief at 53-54. Cornell has not identified a custom or policy of the Borough "that is either unconstitutional on its face or is the 'moving force' behind the constitutional tort of one of its employees." *Arocho*, 922 A.2d at 1021. Section 403.65(d) of the UCC provides that "[a] building code official *may* suspend or revoke a certificate of occupancy when the certificate was issued in error…." 34 Pa. Code §403.65(d) (emphasis added). Similarly, Section 403.63(f) of the UCC provides that "[a] building code official *may* suspend or revoke a [building] permit issued under the [UCC] … when the permit is issued in error…." 34 Pa. Code §403.63(f). Stated otherwise, the building code official *may* suspend or revoke a permit, but need not do so. That the Borough did not revoke or suspend the certificates issued for other similar properties does not mean the Borough acted deliberately to deprive Cornell of property rights. In any case, Cornell did not demonstrate a constitutional violation by a municipal actor; its equal protection claim against the Borough must fail as a matter of law. *Arocho*, 922 A.2d at 1022.

Further, this Court has observed that the "concept of equal protection does not require that [the administrative agency] attack a problem all at once or not at all." *UMCO Energy, Inc. v. Department of Environmental Protection*, 938 A.2d 530, 540 (Pa. Cmwlth. 2007) (quoting *Life Insurance Company of North America v. Insurance Department*, 402 A.2d 297, 299 (Pa. Cmwlth. 1979)). An equal protection claim fails when a property owner merely alleges that state laws could have been applied against its predecessor in title but were not. *Anselma Station,*

26

*Ltd. v. Pennoni Associates, Inc*., 654 A.2d 608, 616 (Pa. Cmwlth. 1995). Cornell contends that the Borough should have taken action against other similarly situated properties not in compliance with the Fire Code. However, the Borough does not have to respond to every violation of the Fire Code in an identical fashion. The Equal Protection Clause of the Fourteenth Amendment does not require uniform enforcement of an ordinance. *Ignelzi v. Zoning Board of Adjustment of the City of Pittsburgh*, 495 A.2d 634, 636-37 (Pa. Cmwlth. 1985).

## Conclusion

For the foregoing reasons, we affirm the trial court's grant of summary judgment to Borough and Yerkes.

_____
MARY HANNAH LEAVITT, President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cornell Narberth, LLC,
                Appellant          :

v.               :   No. 1577 C.D. 2016

Borough of Narberth, Montgomery  :
County, Pennsylvania and Yerkes  :
Associates, Inc., C. O'Brien     :
Architects, Inc. and Cheryl A. O'Brien  :

## **O R D E R**

AND NOW, this 14th day of July, 2017, the order of the Court of Common Pleas of Montgomery County, dated August 25, 2016, in the above-captioned matter is hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge