**NON PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1435
_____


KEITH CAULEY, M.D., Ph.D.,
Appellant

v.

GEISINGER CLINIC,


_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 4:21-cv-0045)
District Court: Honorable Matthew W. Brann
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on November 12, 2024

Before: RESTREPO, MONTGOMERY-REEVES, and AMBRO, *Circuit Judges*

(Filed: May 14, 2025)
_____

OPINION[*]
_____


RESTREPO, *Circuit Judge*

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

Appellant Keith A. Cauley, M.D. appeals the District Court's grant of summary judgment in favor of Appellee Geisinger Clinic ("Geisinger") on his breach of contract and promissory estoppel claims. Dr. Cauley also challenges the District Court's denial of his discovery request and his motion for leave to file a Third Amended Complaint. For the reasons that follow, we affirm.

## I.

Dr. Cauley worked as a Neuroradiology Associate at Geisinger from September 2015 until September 2019. Following peer reviews that raised concerns about Dr. Cauley's performance, Geisinger placed him on administrative leave, and he subsequently resigned. During his administrative suspension, Dr. Cauley retained an attorney and negotiated a resignation agreement rather than face potential termination proceedings. His resignation agreement provided that he would be permitted to review the peer review records that had led to his administrative leave and that Geisinger would provide neutral employment references limited to his dates of employment.

Dr. Cauley later sought employment at several other healthcare facilities without success. The record indicates that Geisinger sent only one reference letter to a prospective employer that provided Dr. Cauley's employment dates and confirmed he exercised clinical privileges at Geisinger. The record also shows that Dr. William Millar, a physician who was an employee of Geisinger, told the prospective employer that Dr. Cauley might not be a good fit for their hospital.

Dr. Cauley filed suit against Geisinger in January 2021, claiming breach of contract, misrepresentation, and defamation. He added a promissory estoppel claim in a Second

2

Amended Complaint. In January 2022, the District Court dismissed the misrepresentation and defamation claims but allowed the breach of contract and promissory estoppel claims to proceed. These remaining claims centered around Dr. Cauley's allegations that Geisinger (1) provided negative references and (2) failed to allow him access to peer review records, violating the resignation agreement. In its January 2022 Order, the District Court granted Dr. Cauley leave to file a Third Amended Complaint by February 17, 2022.

After extensive discovery, Dr. Cauley requested additional documents relating to Geisinger's peer review policies and the peer reviews concerning his performance. Following a hearing, the District Court denied this request. The discovery period closed June 10, 2023, and on July 31, 2023, Dr. Cauley filed a motion seeking leave to file a Third Amended Complaint to add claims for defamation and fraudulent inducement. The District Court denied the motion. On August 24, 2023, Geisinger moved for summary judgment on Dr. Cauley's remaining claims, and the Court subsequently granted that motion on the breach of contract and promissory estoppel claims. Dr. Cauley's timely appeal followed.

## II.[1]

### A. The District Court's Denial of Dr. Cauley's Request for Documents Relating to Geisinger's Peer Review Policies

We review the District Court's discovery rulings for abuse of discretion. *Camiolo v. State Farm Fire & Cas. Co.*, 334 F.3d 345, 354 (3d Cir. 2003). To meet this standard, Dr. Cauley "must show that the court's decision was arbitrary, fanciful or clearly unreasonable."

---

[1] The District Court had subject matter jurisdiction under 28 U.S.C. § 1332. We have appellate jurisdiction under 28 U.S.C. § 1291.

3

*United States v. Collins*, 36 F.4th 487, 494 (3d Cir. 2022) (quoting *Democrat Nat'l Comm. v. Republican Nat'l Comm.*, 673 F.3d 192, 201 (3d Cir. 2012)).  He has failed to meet this burden.

The Federal Rules of Civil Procedure permit discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  The Rules further provide that considerations of proportionality include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Id.*  The scope of discoverable information is not unlimited.  *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999) ("Although the scope of discovery under the Federal Rules is unquestionably broad, this right is not unlimited and may be circumscribed.").  As we have emphasized, "discovery is not intended as a fishing expedition permitting the speculative pleading of a case first and then pursuing discovery to support it; the plaintiff must have some basis in fact for the action."  *Zuk v. E. Pa. Psychiatric Inst. of the Med. Coll. of Pa.*, 103 F.3d 294, 299 (3d Cir. 1996).

Dr. Cauley requested four categories of documents: (1) Geisinger's peer review hearing procedures; (2) Geisinger's policy on professional practice review; (3) underlying diagnostic images relied upon in his peer review process; and (4) emails regarding his peer reviews.[2]  The District Court determined that these materials were irrelevant to Dr. Cauley's remaining claims, which only concerned whether Geisinger provided negative references or denied opportunities

---

[2] Dr. Cauley also requested encrypted text messages, but Geisinger produced them to him on May 15, 2023.

to review peer review records.

We find no abuse of discretion in this ruling. The peer reviews—their procedures, underlying images, and related communications—had no bearing on whether Geisinger complied with its obligations under the resignation agreement. Although Dr. Cauley argues that these documents were relevant to paragraphs 18-24 of his Second Amended Complaint, those paragraphs relate to claims that had already been dismissed from the case. More tellingly, Dr. Cauley acknowledges that he sought the evidence for a future amended complaint—not for the claims at hand. The District Court reasonably recognized this request as the very definition of a fishing expedition. Thus, the District Court did not abuse its discretion in denying Dr. Cauley's discovery request.

### B. The District Court's Denial of Dr. Cauley's Motion for Leave to File a Third Amended Complaint

We review the District Court's denial of Dr. Cauley's motion for leave to file a Third Amended Complaint for abuse of discretion. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). When a party seeks to amend a pleading after the deadline established in a scheduling order, as in this case, the movant must first show "good cause" under Rule 16(b)(4). *Premier Comp Solutions, LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020); *see also* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). Good cause "depends in part on a plaintiff's diligence." *Premier*, 970 F.3d at 319.

Only after the movant successfully establishes good cause does the court proceed to the

more liberal amendment standard of Rule 15(a), which directs the court to give leave "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Premier*, 970 F.3d at 319. As we have noted, "Absent undue or substantial prejudice, an amendment should be allowed under Rule 15(a) unless denial can be grounded in bad faith or dilatory motive, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment." *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (cleaned up). The question of substantial prejudice "requires that [the court] focus on the hardship to the defendants if the amendment were permitted." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). The court should consider "whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Id.*

At the first step of the analysis, the District Court found that Dr. Cauley failed to demonstrate good cause under Rule 16(b)(4). The Court acted well within its discretionary authority in making this determination. Dr. Cauley moved to amend on July 31, 2023— 17 months after the February 17, 2022 amendment deadline, and seven weeks after discovery closed. Although Dr. Cauley claims that discovery revealed new information supporting a defamation claim, the record shows he had received this information by April 28, 2023, yet waited another 94 days to file his motion. Moreover, his proposed fraudulent inducement claim was based on allegations about threats to report him to the National Provider Data Bank— information that had been available since the beginning of the litigation and was referenced in his earlier Complaints. This unexplained delay amply supports the District Court's finding of a lack of diligence and good cause.

As an alternative ground for denial, the District Court determined that—even if Dr.

Cauley had established good cause—the amendment would cause substantial prejudice to Geisinger under Rule 15(a). This determination was equally sound. As the Court noted, the proposed amendment would have added new claims after discovery had closed and Geisinger had filed a dispositive motion. These new claims would have required significant additional investigation into several matters: Geisinger's legal authority to report to the National Provider Database; the factual basis for such a report at the time Dr. Cauley was allegedly threatened; communications between various physicians; and the nature and content of interactions between certain physicians. Moreover, permitting the amendment would have effectively mooted Geisinger's pending summary judgment motion, "thereby voiding the money, time, and efforts expended in preparing that motion and essentially forcing Geisinger to litigate this case again from the very beginning." Appx. 50. As we have noted, prejudice to the non-moving party is "the touchstone for the denial of an amendment," *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (quoting *Conrnell & Co. v. Occupational Safety & Health Rev. Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)), particularly when an amendment would "result in additional discovery, cost, and preparation to defend against new facts or new theories," *Cureton*, 252 F.3d at 273. Granting the amendment would have placed such a hardship on Geisinger.

For these reasons, we find no abuse of discretion in the District Court's denial of Dr. Cauley's motion under both Rule 16(b)(4) and Rule 15(a).


### C. *The District Court's Grant of Summary Judgment*

We review the District Court's grant of summary judgment de novo. *Chavarriaga v. N.J. Dep't Corrs.*, 806 F.3d 210, 218 (3d Cir. 2018). Under this standard, we apply the same test as

7

the District Court, viewing the facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Group Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)). A defendant "meets this standard when there is an absence of evidence that rationally supports the plaintiff's case." *Clark*, 9 F.3d at 326.

The party requesting summary judgment bears the initial burden of supporting its motion with evidence from the record. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the movant properly supports its motion, the nonmoving party must show the need for a trial by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The nonmoving party will not withstand summary judgment if all it has are "[u]nsupported assertions, conclusory allegations, or mere suspicions." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010). Instead, it must "identify those facts of record which would contradict the facts identified by the movant." *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002) (quoting *Childers v. Joseph*, 842 F.2d 689, 694-95 (3d Cir. 1988)).

Under Pennsylvania law, to establish a claim for breach of contract, a plaintiff must demonstrate: "(1) the existence of a contract, including its essential terms; (2) a breach of the contract; and (3) resultant damages." *Doe v. Univ. of Scis.*, 961 F.3d 203, 211 (3d Cir. 2020) (brackets omitted) (quoting *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman*, *P.C.*, 137 A.3d 1247, 1258 (Pa. 2016)). A claim for promissory estoppel requires proof that "(1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise." *Cornell Narberth, LLC v. Borough of Narberth*, 167 A.3d 228, 239 (Pa. Commw. Ct. 2017) (quoting *Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (Pa. 2000)).

Dr. Cauley's contract and promissory estoppel claims rest on two allegations: first, that Geisinger provided negative references that prevented him from obtaining employment elsewhere; and second, that Geisinger failed to provide him access to peer review records. Neither allegation finds support in the record to survive summary judgment.

Regarding the negative references claim, the evidence shows only one instance where a Geisinger physician, Dr. Millar, provided anything that could be construed as a negative reference, telling a prospective employer that Dr. Cauley might not be a good fit. However, as the District Court correctly determined, Dr. Millar was not Dr. Cauley's supervisor at the time of the resignation agreement and did not qualify as the "Employer" bound by the neutral reference provision. Dr. Cauley argues that Dr. Millar's comments should be attributed to Geisinger, but the record does not support this contention. Dr. Millar was not speaking on behalf of Geisinger when providing his assessment to the prospective employer. We also note the neutrality

9

provision did not include language obligating Geisinger to affirmatively prevent its employees from providing references in their personal capacities. The record confirms that Geisinger provided only one reference letter regarding Dr. Cauley—a neutral letter to the prospective employer stating only his employment dates and confirming that he exercised clinical privileges during that time. This letter fully complied with Geisinger's obligations under the resignation agreement.

Dr. Cauley also speculates that Aalpen Patel, M.D. (one of Dr. Cauley's supervisors at Geisinger) provided negative information to Christopher G. Filippi, M.D. (a physician at another prospective employer). However, Dr. Filippi testified that he had no knowledge of Dr. Cauley's resignation circumstances or any peer review involving Dr. Cauley and denied receiving any negative information from Geisinger. Dr. Patel similarly testified that he would not be able to discuss any specifics regarding Dr. Cauley's employment with Dr. Filippi. Dr. Cauley's unsupported speculation about the content of conversations between Dr. Patel and Dr. Filippi cannot create a genuine dispute of material fact sufficient to defeat summary judgment. *See Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 228 (3d Cir. 2009) (citation omitted) ("Speculation and conjecture may not defeat a motion for summary judgment.").

As for the peer review records, the evidence establishes that Geisinger provided Dr. Cauley with multiple opportunities to review these documents. Dr. Patel testified that Dr. Cauley had scheduled a meeting to review the peer review records, but Dr. Cauley failed to attend. Gino Mongeluzzo, M.D., another Geisinger physician, similarly testified that Dr. Cauley was given an opportunity to review the peer review documents. After his resignation, Dr. Cauley was offered additional opportunities to review the records on October 27, 2020 and May

10

12, 2021, as documented in the declaration of Cindy A. Sheridan, Esq., Associate Chief Legal Officer at Geisinger's Department of Legal Services.

Dr. Cauley claims his testimony creates a factual dispute on this issue, but he failed to identify any specific testimony contradicting the evidence that Geisinger offered him opportunities to review the records. The text communications he cites with Dr. Mongeluzzo do not contradict the fact that opportunities were provided; they merely indicate that Dr. Cauley did not take advantage of those opportunities.

Viewing all evidence in the light most favorable to Dr. Cauley, we find no genuine dispute of material fact regarding whether Geisinger breached its contractual obligations or made promises that would give rise to a promissory estoppel claim. The record clearly shows that Geisinger provided a neutral reference letter and offered Dr. Cauley multiple opportunities to review the peer review records. Dr. Cauley has not presented evidence that would allow a reasonable jury to find in his favor on either claim.

### III.

For the foregoing reasons, we affirm the judgment and orders of the District Court.