# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christopher M. Erb                           :
                                             :
                v.                           :    No. 1421 C.D. 2017
                                             :    Argued:  September 14, 2018
City of Lancaster,                           :
                              Appellant      :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge


**OPINION NOT REPORTED**


MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER                         FILED:  October 11, 2018


City of Lancaster (the City) appeals from an Order of the Court of Common Pleas of Lancaster County (trial court),[1] dated September 11, 2017, which, after a non-jury trial, awarded judgment to Christopher M. Erb (Erb) in the amount of $37,446.48 on his cause of action for breach of contract. The City argues that the trial court erred in finding that the City breached its contract with Erb because the City never promised to pay him a monthly pension benefit of $4382.30 as an incentive to retire early from the City's Police Department. After review, we agree with the City that the contract is unambiguous and does not promise to pay Erb a monthly pension benefit of $4382.30.

---

[1] The Honorable Leonard G. Brown, III, presided.

In April 2016, Erb, a police officer with the City from September 5, 1989, until December 31, 2009, filed a Complaint against the City seeking damages for breach of contract and estoppel based on the City having allegedly promised to pay him, as part of its Early Retirement Incentive Program, a monthly pension benefit of $4382.30 beginning on September 5, 2014. (Complaint (Compl.) ¶¶ 5, 7, 10-11, 20-25, Record (R.) Item 1; Reproduced Record (R.R.) at 107 (effective retirement date).) However, Erb alleged, the City has been paying him a monthly pension benefit of only $3342.12. (Compl. ¶ 19.)

The City filed a Motion for Summary Judgment, which the trial court granted in part and denied in part. The trial court dismissed Erb's cause of action for estoppel. (Trial Ct. Opinion and Order, May 16, 2017, at 5-6, R. Item 22.) Thereafter, the matter proceeded to a one-day, non-jury trial on the contract claim only.

At trial, the following testimony and evidence was presented. In November 2009, due to the national fiscal crisis resulting in the loss of revenue to the City and "the loss of a police service contract with Lancaster Township," the City, in an attempt to reduce its staff and avoid layoffs of police, devised the Early Retirement Incentive Program. (Trial Ct., Finding of Fact (FOF) ¶ 10.) The Early Retirement Incentive Program was offered to two groups of officers, those with 25 years or more of service, and those, such as Erb, with more than 20 years of service but less than 25 years of service. Police officers with 25 years or more of service were offered an incentive to retire of $1000 per year of service payable in a lump sum and would begin to collect their pensions upon their retirement. Police officers with more than 20 years of service but less than 25 years of service were offered payment for accrued unused paid time off (PTO), post-employment medical benefits, and a Retirement

2

Incentive Payment (Option A).  The Confidential Separation Agreement and General

Release (the Contract), provided to Erb, described the terms of the Early Retirement

Incentive Program as follows:

>    2.    <u>Payments and Benefits</u>.  In consideration of the releases herein by Releasors and the warranties and representations of Employee, Employer agrees as follows:
>
>    a.    <u>Retirement Incentive Payment</u>.  Employer agrees to pay Employee the lump sum of **$140,073.795**, less payroll taxes and other legally mandated withholdings ("the Retirement Incentive Payment").  **The precise calculation and formula used to determined [sic] the amount of your Retirement Incentive Payment is attached hereto as Exhibit A**.
>
>    \*\*\*
>
>    c.    <u>Payment for Accrued Unused PTO</u>.  Employer agrees to pay Employee for any accrued but unused PTO to which Employee may be entitled . . . .  Pursuant to the terms of this Paragraph, you shall receive an estimated payment in the amount of **$14,263.12**, less payroll taxes and other legally mandated withholdings, for all accrued, unused PTO to which you are entitled.
>
>    d.    <u>Benefits</u>.  Employees entitled to post-employment medical benefits pursuant to an applicable collective bargaining agreement will continue to receive their Employer-sponsored health benefits for any term outlined in the applicable collective bargaining agreement . . . .
>
>    \*\*\*
>
>    f.    <u>No Other Benefits</u>.  Employee shall have no right to receive any further payment or benefit arising from his or her employment relationship with Employer except those benefits and payments described herein, those required by law . . . or vested benefits under any Employer retirement plan.
>
>    \*\*\*

3

3.  Adequate Consideration.  You agree that (i) the consideration and payments made to you by Employer pursuant to this Agreement represent the sole and exclusive payments and undertakings to be provided to you; (ii) said payments include any and all outstanding and accrued compensation, wages, and benefits that may be due and owing you; (iii) with the exception of any vested retirement benefits, Employer has no further obligation to provide Employee with any compensation of any sort, or any non-monetary or monetary benefits in addition to that which is set forth in Paragraph No. 2, above; and (iv) the aforementioned payments are in excess of what you otherwise would have been entitled to and constitute good and sufficient consideration for this Agreement.

(R.R. at 107-08 (second emphasis added).)  Attached to the Contract were three exhibits.  Relevant here was Amended Exhibit A,[2] entitled "**Retirement Incentive Payment Calculation**."  (*Id.* at 114 (emphasis in original).)  Erb's Retirement Incentive Payment was $137,862.45, which, as Amended Exhibit A indicated, was calculated based on multiplying Erb's monthly pension benefit as of December 31, 2009 ($3342.12), the date of his retirement, by the number of months to his 25th service anniversary date (55).  This figure ($183,816.60) was then multiplied by 75% to equal the amount of the Retirement Incentive Payment.  (*Id.*)  Also on Amended Exhibit A, under a separate heading, "Pension Calculation," was Erb's 25th service anniversary date, listed as September 5, 2014, and "**Monthly Pension Benefit Amount To Be Received Commencing On 25 Year Anniversary Date**" (25 Year Pension Benefit), listed as **$4382.30**.  (*Id.* (emphasis added).)  Erb **acknowledged that there was nothing in the Contract that indicated the amount of his monthly pension benefit**; that figure appeared only on Amended Exhibit A.  (R.R. at 30, 57.)

_____

[2] As explained at trial, Exhibit A was amended because the original calculation was done in November 2009, but Erb did not retire until January 2010, at which point his salary had increased and the amount of time until he reached his 25th service anniversary date had decreased, which had the effect of reducing his Retirement Incentive Payment.  (R.R. at 70.)

4

The idea behind the Retirement Incentive Payment, the City's Business Administrator Patrick Hopkins (Hopkins) explained, was to "bridge the gap" from the time these officers retired until when they started receiving their pensions on their 25th service anniversary date. (R.R. at 64-66.) Hopkins testified that there was nothing in the Contract that proposed awarding an officer a greater pension benefit, or commencing payment of an officer's pension benefit, before the officer's 25th service anniversary date. (R.R. at 66.) The City designed the Early Retirement Incentive Program so that it would not impact the pension plan, Hopkins testified.

In early December 2009, Hopkins held an information session with officers who were eligible to retire early. Erb, who was then the President of the City's Police Officers' Association (POA) and involved in bargaining over the Early Retirement Incentive Program, attended the session. According to Hopkins, during the session it became apparent that the officers were confused about the figure listed as the 25 Year Pension Benefit. (R.R. at 72, 90.) Hopkins explained to the officers, he testified, that the 25 Year Pension Benefit "is not your pension benefit. This is what your pension benefit would be if you didn't take this plan and if you left after 25 years of service and we add[ed] three-percent annual increases." (R.R. at 72.) Hopkins explained during trial that the 25 Year Pension Benefit figure was included in the Contract on legal advice, so that officers would be aware of the difference in their pension benefit based on whether they accepted early retirement or waited until their 25th service anniversary date. According to Erb, however, while Hopkins claimed "that there was confusion, it wasn't on [Erb's] part. [He] understood what [Hopkins] said in that meeting and so did other [officers]." (R.R. at 45.)

Following the information session, discussions between the POA and the City, in which Erb participated, resulted in the City proposing an alternative, known as

5

Option B, to incentivize early retirement. Under Option B, officers were offered payment for accrued unused PTO and permitted to retire on January 31, 2010, at which point they would immediately begin receiving their pension benefits based on a calculation of those officers having served 25 years. The City would contribute to the pension fund for the cost of Option B. (R.R. at 141-42.) Hopkins explained that in order to change a pension benefit, as Option B proposed, the City had to have an actuarial evaluation and the City Council had to amend the City Code. Option B did not include the Retirement Incentive Payment as Option A did.

On January 15, 2010, the deadline, Erb signed the Contract, accepting Option A.[3] (R.R. at 26; Erb's Trial (Tr.) Ex. B; FOF ¶ 38.) However, on January 18, 2010, believing that he was eligible for Option B, Erb e-mailed Hopkins what he believed would be his monthly pension benefit, listing it as $3817.08.[4] (City's Tr. Ex. N, R.R. at 143-45; Notes of Testimony (N.T.) at 52-54, R.R. at 52-54.)

On January 19 or 20, 2010, after he signed the Contract, Erb met with a Human Resources Generalist to review his paperwork. The Human Resources Generalist reviewed the Contract and, turning to Amended Exhibit A, put a box in ink around the $4382.30 figure and told him that this would be his pension benefit.

---

[3] For reasons that are not entirely clear from the record, Erb testified that the Mayor's Office told him that he was not eligible for Option B, so Erb accepted Option A. Erb was the only officer who accepted Option A.

[4] Erb testified that he thought the figure should be slightly higher, about $3900. Hopkins testified that this figure appeared accurate.

Ultimately, the City Council approved Option B but only for officers with 21 years of service or more, which excluded Erb.[5] By the time Option B was adopted, Erb testified, he was retired.[6]

In August 2014, Erb met with the Chief of Finance for the City to sign paperwork needed for Erb to begin receiving his monthly pension benefit. Erb asked the Chief of Finance what his pension benefit would be for September since it was prorated based on his 25th service anniversary date falling on September 5. The Chief of Finance reviewed Erb's file and, while looking at Amended Exhibit A, said his pension benefit for September would be the $4382.30 figure, prorated for 25 days, which, after deductions, was the amount Erb received in September.

In October, however, Erb received a gross amount of only $2452.92. Erb inquired and received a memorandum from Hopkins explaining the discrepancy. (R.R. at 41-42, 77-79, 120-21.) In that memorandum, after outlining the Early Retirement Incentive Program and the calculation of Erb's Retirement Incentive Payment, Hopkins explained that the Payroll Department used the wrong figure on Amended Exhibit A. The Payroll Department used the $4382.30 figure, which, Hopkins stated, was the figure Erb would have received had he not retired early and continued working until his 25th service anniversary date, when the Payroll Department should have used the $3342.12 figure, which was Erb's pension benefit as of December 31, 2009. The $4382.30 figure, Hopkins stated, was based on Erb

---

[5] Option B was adopted by the City Council on February 9, 2010. Lancaster, Pa., Code of the City of Lancaster (City Code) §§ 64-38–64-40 (Feb. 9, 2010).

[6] Erb retired retroactive to December 31, 2009. In March 2010, he started working for the Berks County District Attorney's Office in its computer forensics laboratory.

receiving a three-percent salary increase each year until he reached his 25th service anniversary date.[7] Going forward, Erb would receive the gross amount of $3342.12.[8]

Erb testified that had he known his pension benefit was going to be only $3342.12, he would not have retired early. (R.R. at 36; FOF ¶ 42.) Erb made his decision to retire early, he testified, based on him receiving $4382.30. Erb noted that the Retirement Incentive Payment he received was less than had he continued working for another five years. Erb also noted that he would have preferred to retire early under Option B, which, he agreed with the City's Counsel, was a better financial outcome for him.

The City presented expert testimony from Thomas Zimmerman, the actuary for the City's pension plans, who testified that the correct calculation of Erb's monthly pension benefit was $3342.12 and, if the City was ordered to pay Erb a monthly pension benefit of $4382.30, the auditor general would find the City in violation of its pension plan because that benefit would be contrary to the collective bargaining agreement and the City Code.[9] Further, if Erb was awarded a pension benefit of $4382.30, in order for the City to cover the increased cost, it would have to contribute, based on actuarial projections of Erb's life expectancy, another $20,450 per year for 14 years.

Following the trial, the trial court issued findings of facts and conclusions of law as follows. While finding that Hopkins had provided credible testimony about the Early Retirement Incentive Program and the relevant facts, the trial court effectively rejected his testimony that he had clarified the confusion around the 25

---

[7] Hopkins testified that from 2010 until 2015 the average increase in salary was three percent, but some years it was lower and other years it was higher.

[8] The reason Erb received only $2452.92 in October 2014 was because the City deducted the amount Erb was overpaid in September.

[9] Zimmerman noted that the City is not punished for having a single violation.

8

Year Pension Benefit. (FOF ¶¶ 6, 35-37.) Instead, the trial court found, "the City did not provide clarified information for eligible officers." (*Id.* ¶ 37.) The trial court credited Erb's testimony that he "would not have chosen to retire early had he known" he was to receive a monthly pension benefit of only $3342.12, and concluded that Erb had "**reasonably relied** on the written offer" the City made to him which "**induced** [Erb] to accept the offer[.]" (*Id.* ¶¶ 42-43 (emphasis added).) Then, the trial court, after reciting the principles of law governing whether a contract is ambiguous, concluded that the Contract and its exhibits "contain[ed] a patent ambiguity of what pension amount Erb [was] to receive[,]" whether it was $4382.30 or $3342.12. (Trial Ct., Conclusion of Law (COL) ¶ 3.) Guided by the intent of the parties, and construing the Contract and its exhibits against the City as drafter of them, the trial court resolved the ambiguity in favor of Erb, stating as follows:

> 6. . . . . The stated intent of the City was to encourage the early retirement of various employees through a program providing incentives for early retirement. To entice retirement, the City intended to provide an option giving a lump sum payment to officers with less than 25 years of service, but more than 21 years of service and a pension benefit. The City's intent was to offer a reduced pension benefit for early retirement, though this was never stated in any writing to Erb. Despite this intent, the City represented to Erb that he would receive a lump sum and his full pension. The intent of savings to the City for Erb's early retirement was met with Erb's acceptance of the City's offer. Instead of paying Erb his salary until 25 years of service and then full pension, the City paid Erb $176,000[10] less than it would have had he not retired early, receiving the benefit of its bargain.

> 7. The evidence[] established: (1) that there was confusion among the officers as to their benefit; (2) that the City was aware of the confusion;

---

[10] In its findings of fact, the trial court explained that had Erb worked another 57 months at his salary of $66,112, he would have earned another $314,000, which, after deducting the Retirement Incentive Payment of $137,862.45, resulted in a savings of $176,169.54 to the City. (FOF ¶ 44.)

9

(3) that no calculation was provided to the officers showing the amount they would have received upon retirement and the amount they were receiving under a selected option; and, (4) despite the City's knowledge of the confusion, no amended correspondence was provided to Erb explaining the amount of his benefit upon reaching retirement age. It was reasonable for Erb to conclude that he would receive a pension of $4,382.30 upon reaching the age of retirement. Erb's intent was to accept the early retirement option and lump sum, forego his salary for the years between his early retirement and full retirement age and receive his pension of $4,382.30 upon reaching his normal retirement age.

8. . . . . A contract exists between the parties, imposing a duty upon the City to pay Erb his monthly pension. Amended Exhibit A to the [Contract] specifically states, "Monthly Pension Benefit Amount to Be Received Commencing On 25 Year Anniversary Date = $4,382.3 [sic]."

(COL ¶¶ 6-8 (last alteration in original).) Based on the foregoing, the trial court entered an order granting Erb judgment "in the amount of $37,446.48 in past benefits plus interest at the statutory rate."[11] (Trial Ct. Order, Sept. 11, 2017.)

On appeal,[12] the City argues that it is entitled to judgment as a matter of law because the Contract and its exhibits are unambiguous and do not provide for a $4382.30 monthly pension benefit for Erb. The only forms of consideration the City promised Erb was payment for accrued unused PTO, post-employment medical benefits, and a Retirement Incentive Payment, all of which he received. Indeed, the

---

[11] The trial court filed its findings of facts and conclusions of law on the same day it entered judgment in favor of Erb, contrary to Rule 227.1 of the Pennsylvania Rules of Civil Procedure, Pa.R.C.P No. 227.1. (Rule 1925(a) Opinion at 1 n.1.) The trial court concluded that its error was harmless because the City had not lost any substantive right, noting that the City had filed a post-trial motion for relief but which the trial court did not address prior to the City timely filing its notice of appeal, thereby preserving the issues raised in its motion. (*Id.*)

[12] Our "standard of review of a verdict following a non-jury trial is limited to determining whether the findings of the trial court are supported by competent evidence and whether the trial [court] committed error in the application of law." *M & D Props., Inc. v. Borough of Port Vue*, 893 A.2d 858, 861 n.4 (Pa. Cmwlth. 2006).

10

City contends, the parties understood the City was without legal authority to alter Erb's pension benefit because it was a statutory entitlement. The trial court, the City notes, found an ambiguity in Amended Exhibit A because it labeled the $3342.12 figure as Erb's pension benefit as of December 31, 2009, and the $4382.30 figure as "Monthly Pension Benefit Amount To Be Received Commencing [O]n 25 Year Anniversary Date." (City's Brief (Br.) at 14 (quoting R.R. at 114).) However, nowhere in Amended Exhibit A or anywhere else in the Contract was the pension benefit described as consideration. The City notes that the trial court found that Erb reasonably relied on the City's offer and was induced into signing the Contract, but, the City argues, those are not elements of breach of contract. Therefore, because the Contract and its exhibits are unambiguous and do not provide for any enhanced pension benefit, and since Erb's pension benefit is determined by statute, the City asserts that the trial court erred in granting judgment in Erb's favor.[13]

Erb argues that Amended Exhibit A, which was specifically incorporated into the Contract, "clearly and unequivocally identified the Monthly Pension Benefit Amount To Be Received Commencing on 25 Year Anniversary Date." (Erb's Br. at 10.) Amended Exhibit A, Erb asserts, does not say that this is the monthly pension

---

[13] The City also argues that even if the Contract and its exhibits are ambiguous, the trial court's finding that the $4382.30 figure was never explained to Erb is unsupported by the record evidence, for, according to Hopkins' testimony, which the trial court found credible, he explained to Erb during the information session that this figure represented what his pension benefit would be if he worked for 25 years. Relatedly, the City argues that the trial court's characterizations of the $4382.30 figure as Erb's "full pension" and the $3342.12 as his "reduced pension" are unsupported by any evidence because Erb's pension benefit is determined by law based on his salary and number of years of service at the time of retirement. (City's Br. at 20-21 (citing COL ¶¶ 6, 8).) Finally, the City argues that to require it to pay Erb $4382.30 as a monthly pension benefit would put it "in violation of positive law." (City's Br. at 22 (citing *Holman v. City of Pittsburgh* (Pa. Cmwlth., No. 2149 C.D. 2010, filed Aug. 5, 2011), slip op. at 12-15).) We need not address these contentions in light of our holding that the Contract and its exhibits are unambiguous.

benefit Erb was to receive if he rejected the Early Retirement Incentive Program. Erb notes that he testified that he would not have retired early had the City told him he was going to receive a pension benefit of only $3342.12. Rather, he would have continued to work for the City. Erb claims that he proved the elements establishing a breach of contract, namely, the existence of a contract, which the City breached, resulting in damages to him. Erb states that, to the extent his analysis differs from that of the trial court, this Court may still affirm.

In the City's reply brief, it argues that it did not promise to pay an enhanced pension benefit to Erb. The "Monthly Pension Benefit Amount To Be Received Commencing On 25 Year Anniversary Date" listed on Amended Exhibit A, (R.R. at 114), the City reiterates, is not included in the Contract as part of the consideration for Erb's early retirement.

We begin by noting that the necessary elements of breach of contract are "(1) the existence of a contract, including its essential terms, (2) a breach of the contract[,] and, (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016). The resolution of this appeal hinges on the interpretation of the Contract and its exhibits, particularly Amended Exhibit A, for it is axiomatic that there can be no breach of contract if the contractual term at issue is, in fact, not part of the contract. *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004). Thus, we set forth the well-established principles governing the interpretation of a contract, which our Supreme Court has summarized as follows:

> When a written contract is clear and unequivocal, its meaning must be determined by its contents alone. It speaks for itself and a meaning cannot be given to it other than that expressed. Where the intention of the parties is clear, there is no need to resort to extrinsic aids or

12

evidence. Hence, where language is clear and unambiguous, the focus of interpretation is upon the terms of the agreement as **manifestly expressed**, rather than as, perhaps, silently intended.

***

The fundamental rule in contract interpretation is to ascertain the intent of the contracting parties. In cases of a written contract, the intent of the parties is the writing itself. . . . In determining the intent of the contracting parties, all provisions in the agreement will be construed together and each will be given effect . . . .

*Lesko v. Frankford Hosp.-Bucks Cty.*, 15 A.3d 337, 342 (Pa. 2011) (citations omitted).

Stated differently, "when the words of a contract are clear and free of ambiguity, the intent of the parties is to be determined solely from the express language of the agreement." *Dep't of Transp. v. Semanderes*, 531 A.2d 815, 817 (Pa. Cmwlth. 1987). A contractual term is ambiguous:

if, and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning. A contract is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends; and a contract is not rendered ambiguous by the mere fact that the parties do not agree upon the proper construction.

*State Highway & Bridge Auth., Dep't of Transp. v. E.J. Albrecht Co.*, 430 A.2d 328, 330 (Pa. Cmwlth. 1981) (citation omitted). Whether a contractual term is ambiguous is not "resolved in a vacuum," and "[w]e will not . . . distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity." *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999). Only if "a written contract is ambiguous may extrinsic or parol evidence be considered to

determine the intent of the parties." *Dep't of Transp. v. E-Z Parks, Inc.*, 620 A.2d 712, 716 (Pa. Cmwlth. 1993).[14] An unambiguous contract is interpreted by the court as a matter of law, while an ambiguous contract is interpreted by the finder of fact. *Lesko*, 15 A.3d at 342; *Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004).

Here, after examining the **entire** Contract and its exhibits, we conclude that they are clear and unequivocal and do not provide for the payment of a monthly pension benefit of $4382.30. The relevant portions of the Contract, as we have quoted from, provide for only **three** forms of consideration: (1) payment for accrued unused PTO; (2) post-employment medical benefits; and (3) a lump sum payment of $140,073.795 in the form of a Retirement Incentive Payment. (R.R. at 107-08.) The Contract provides for "**No Other Benefits**" with the exception of, as pertinent here, "**vested** benefits under any Employer retirement plan."[15] (R.R. at 108 (emphasis added).) Indeed, these **three** forms of consideration are to be the "sole and exclusive payments and undertakings to be provided to" Erb, and, "with the exception of any vested retirement benefits, [the City] has no further obligation to provide [Erb] with any compensation of any sort, or any non-monetary or monetary

---

[14] We note that the trial court recited that where an agreement is ambiguous, the court, in determining the intent of the parties, must construe the agreement against the drafter. (COL ¶ 5.) However, a court should resort to this rule of construction only if extrinsic evidence does not shed light on the meaning of the ambiguous language. *Mun. Auth. of Borough of Midland v. Ohioville Borough Mun. Auth.*, 108 A.3d 132, 139 (Pa. Cmwlth. 2015).

[15] We note that the City Code provides that where an officer retires with "at least 20 years of service but less than 25 years of service," he shall receive a lifetime pension commencing on his 25th service anniversary date, which "shall be based on the amount of base rate compensation at the time of such retirement or termination of employment." Lancaster, Pa., City Code § 64-6B (May 25, 2004); (City's Tr. Ex. G). Schedule A to Chapter 64 of the City Code sets forth, consistent with Zimmerman's testimony, that an officer's monthly pension benefit shall be in "an amount equal to 1/2 of his/her base rate compensation plus any service increment to which such retired police officer is entitled under § 64-7 of this article." Lancaster, Pa., City Code § 64 Attachment 1 (May 1, 2005); (City's Tr. Ex. G; N.T. at 6-7, R.R. at 6-7).

benefits in addition to that which is set forth in **Paragraph No. 2,** above . . . ." (*Id.* (emphasis added).) Amended Exhibit A was incorporated into the Contract, but only to the extent it showed "[t]he precise calculation and formula used to determine the amount of your **Retirement Incentive Payment.**" (*Id.* at 107 (emphasis added).) Importantly, under the heading "Retirement Incentive Payment," Erb's "Monthly Pension Benefit as of 12/31/09," the date he retired, accurately reflected $3342.12. (*Id.* at 114.)

In short, as even Erb acknowledged during his testimony, there is **no promise** to pay him a monthly pension benefit of $4382.30 within the Contract in exchange for him retiring early. (N.T. at 30, 57, R.R. at 30, 57.) The only reference to a monthly pension benefit of $4382.30, again, is in Amended Exhibit A, where under a separate heading, "Pension Calculation," Erb's 25th service anniversary date is listed as September 5, 2014, and "Monthly Pension Benefit Amount To Be Received Commencing On 25 Year Anniversary Date" is listed as $4382.30. (R.R. at 114.) This sole reference to $4382.30, in the absence of any promise to pay anything other than the three forms of consideration listed in the Contract, does not amount to a promise to pay. Reading the Contract and its exhibits together, the reference to $4382.30 and its accompanying language was for informational purposes, and not a promise to pay.

We can understand, in the absence of any explanation,[16] how Erb, in reading this Contract and its exhibits, might have expected his monthly pension benefit to be $4382.30 when he reached his 25th service anniversary date. Both Erb and the trial

_____

[16] We note that the trial court rejected Hopkins' testimony that he clarified to Erb, and those who attended the information session, that this $4382.30 figure was the pension benefit these officers would receive if they did not retire early, which is supported by Erb's competent trial testimony and, thus, we have not disturbed that finding of fact.

court, in part, respectively litigated and adjudicated this matter as if Erb was claiming that he had been negligently induced into accepting the Contract. (N.T. at 36, R.R. at 36 (Erb testifying that he decided to retire based on him receiving a monthly pension benefit of $4382.30 and, had he known he was going to receive a benefit of only $3342.12, he would not have retired early); FOF ¶ 43 (finding that Erb had "reasonably relied on the written offer . . . and was induced to accept the offer")).) However, the only claim at issue before the trial court, and before us, is Erb's breach of contract, which is governed by the terms of the contract, not reliance or inducement. *Cf. Cornell Narbeth, LLC v. Borough of Narbeth*, 167 A.3d 228, 239-41 & n.8 (Pa. Cmwlth.) (reciting elements of negligent misrepresentation and promissory estoppel as including reliance and inducement), *petition for allowance of appeal denied*, 177 A.3d 818 (Pa. 2017). The trial court had dismissed Erb's estoppel claim on the City's Motion for Summary Judgment from which there has been no cross-appeal. Again, when the entire Contract and its exhibits are carefully examined, it is clear that there is no promise in the Contract or its exhibits to pay Erb a monthly pension benefit of $4382.30, and this figure was included on Amended Exhibit A for informational purposes.

Therefore, since there is, as a matter of law, no promise in the Contract or its exhibits to pay Erb a pension benefit of $4382.30, the City could not have been found in breach of the Contract for failing to pay him that amount. The trial court thus erred when it found in favor of Erb and should have granted judgment in favor of the City dismissing Erb's breach of contract cause of action.

_____

16

**RENÉE COHN JUBELIRER**, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christopher M. Erb        :

                    :

        v.             :    No. 1421 C.D. 2017

                    :

City of Lancaster,       :

            Appellant  :

# O R D E R

**NOW**, October 11, 2018, the Order of the Court of Common Pleas of Lancaster County (trial court), dated September 11, 2017, is **REVERSED**, and the matter is **REMANDED** to the trial court with instructions to dismiss the cause of action for breach of contract.

Jurisdiction relinquished.

_____

**RENÉE COHN JUBELIRER,** Judge